## RATHBONE *v.* HAMILTON.

REVISED STATUTES, CONSTRUCTION OF; MARRIED WOMEN, SOLE AND
  SEPARATE ESTATE OF; EJECTMENT; REAL ESTATE,

SALE OF, BY EXECUTOR.

1. If the meaning of the Revised Statutes is plain, the court will not recur to the original statutes to see if errors were committed in the revision, but may do so to construe doubtful language employed.

2. Where a husband in order to vest the title of his real estate in his wife transfers it to a third person who contemporaneously and for a nominal consideration conveys it to the wife, she acquires the property " by gift and conveyance from her husband," within the meaning of the Married Womans' Act (R. S. D. C., Sec. 727), and holds it as her general estate, subject to her common law disabilities as a *feme covert; following* Cammack v. Carpenter, 3 App. D. C. 219.

3. Under the same act, property so acquired by a married woman cannot be conveyed by her, without the joinder of her husband, or devised by her, so as to deprive him of his marital rights.

4. In such a case, where the deed from the third person to the wife is an ordinary deed in fee simple, it will not have the effect of creating a sole and separate estate in the wife, which will enable her either at law or in equity to dispose of the property by deed or will irrespective of her husband.

5. A mere equitable estate cannot in an action of ejectment be set up to defeat a legal estate.

6. Where a will directs that real and personal estate be sold, and after deducting funeral and other expenses, that the proceeds should be distributed in a certain manner, the executor named in the will has an implied power to sell and convey the real estate.

7. In an action of ejectment by a daughter to recover as heir at law real estate of which her mother died seized, the death of the father of the plaintiff must be shown either by positive proof or presumption, where he, if living, would be entitled to an estate by the curtesy.

No. 320.  Submitted October 5, 1894.  Decided November 9, 1894.

HEARING on a bill of exceptions by the defendant in an action of ejectment.  *Judgment reversed.*

The COURT in its opinion stated the facts as follows:

This is an action of ejectment brought by the appellant, Grace A. B. Rathbone, as one of the heirs at law of Lucy V. Elkin, deceased, against the appellee, Frances Rebecca Hamilton, to recover an undivided third part of an acre of land, situate in the District of Columbia.  At the trial below a verdict was directed to be returned for the defendant, and the plaintiff has appealed.

Both parties claim to have derived title from a common source, that is, from Mrs. Lucy V. Elkin, deceased; the plaintiff as heir-at-law, claiming by descent, and the defendant as purchaser, claiming by virtue of a sale made under the will of Lucy V. Elkin.  The facts of the case, so far as the leading and important questions are concerned, are but few, and about them there is no dispute.

It appears from the record that, on the 29th day of April, 1872, Abram Elkin, Jr., the husband of Lucy V. Elkin, since deceased, was owner of the land in controversy, and on that day he (his wife joining with him), for the nominal consideration recited of five dollars, conveyed the property to Frederick G. Calvert, the brother of the wife, Lucy V. Elkin; and on the same day, and as part of one and the same transaction, the brother, Frederick G. Calvert, for the like nominal consideration of five dollars, recited in the deed, reconveyed the property to the said Lucy V. Elkin, and both deeds were, at the same time, filed for record, and were recorded together.  They appear to have been executed and

acknowledged before the same justice of the peace, and the deed from Calvert and wife to Mrs. Elkin is an exact transscript of the deed from Elkin to Calvert, *mutatis mutandis*. After they were recorded, both deeds were, at the same time, delivered to Abram Elkin, the husband, according to the memorandum made upon the record by the recording officer.

Being thus invested with the fee simple estate in the property, Mrs. Lucy V. Elkin, on the 22d day of April, 1876, made what purports to be her last will and testament, executed in due form, and which was, after her death, admitted to probate. By this will she devised the real estate to be sold, and the proceeds of sale to be distributed, and she appointed her brother, Frederick G. Calvert, her executor. Shortly after the date of her will Mrs. Elkin died, and left her husband and three children surviving her. Her husband, soon after his wife's death, left the District of Columbia, and has not since been heard of by his family; and whether he is dead or alive is a question about which there is no positive proof in the record, except the length of time since he was heard of, and the question was not submitted to the finding of the jury.

Acting under the will as executor, Calvert, sometime after obtaining letters testamentary upon the estate of his sister, sold and conveyed the real estate in controversy to the defendant, Frances Rebecca Hamilton, who took possession of the property and still holds the same, claiming ownership thereof by virtue of the sale and conveyance made to her under the will of Lucy V. Elkin, deceased.

At the trial, assuming all the material facts to be undisputed, the plaintiff prayed the court to instruct the jury to return a verdict for the plaintiff; and the defendant, on the other hand, prayed the court to instruct the jury, that, upon the whole evidence, they should return a verdict for the defendant; and this latter instruction was granted, and the former refused. To these rulings the plaintiff excepted.

*Mr. H. G. Milans, Mr. G. E. Hamilton* and *Mr. M. J. Colbert* for the plaintiff in error:

1. The proof in this case establishes that the real estate in dispute was acquired by Lucy V. Elkin by gift or conveyance from her husband within the meaning of the Married Woman's Act in force in this District, and was, therefore, her general property and not her statutory separate estate. *Kaiser* v. *Stickney*, Bk. 26 Law. Co-op. Ed. Sup. Ct. Rep. 176; *Williams* v. *Reid*, 19 D. C. 46; *Cammack* v. *Carpenter*, 3 App. D. C. 219.

2. This property being the general property of the wife and not her statutory separate estate, she could transmit the same to her heirs, but she could not dispose of it by will. At common law a married woman had no power to devise her real estate. See Shep. Touch. 402; 2 Black. 497; 2 Kent Com. 170; 3 Com. Dig. 13; Powell on Devises, 97; *Marston* v. *Norton*, 5 N. H. 205; *Osgood* v. *Breed*, 12 Mass. 525; *Gebb* v. *Rose*, 40 Md. 387; *Van Winkle* v. *Schoonmaker*, 15 N. J. Eq. 384; *Bradish* v. *Gibbs*, 3 Johns. Chan. 523.

3. Calvert, the executor under Mrs. Elkin's will, was not authorized to sell the real estate in dispute, even assuming that she had the power to direct a sale or to make a valid devise.

Mrs. Elkin's will directs that "the real estate . . . now owned and held by me be sold, and after deducting my funeral and other necessary expenses, I give and bequeath to my dear husband, Abram Elkin, the sum of one thousand ($1,000) out of the proceeds of sale. I then direct that the remaining portion of the money received from said sale be divided in equal shares between my children . . . and I do hereby constitute and appoint Fred. G. Calvert my sole executor."

The Maryland Act of 1785, Ch. 72, Sec. 4, expressly provides that if a "person shall die, leaving real estate to be sold for the payment of debts or other purposes, and shall

not by his will appoint a person to sell or convey the property, the chancellor shall have full power upon application or petition from any person or persons interested in the sale of such property to appoint a trustee or trustees for the purpose of selling. Thompson's Digest, 127; *Marshall* v. *Wheeler,* 18 D. C. 414; *Hunter* v. *Bryson,* 5 G. & J. 483.

When the testator does not in terms direct the person named as executor to sell, the intention that he shall make the sale must be gathered from some other language or direction in the will, and in the absence of any such implied intention, no power will be presumed. 1 Williams on Exec. 655.

4. Upon this record the judgment of the court below should be reversed and the cause remanded with directions to enter a judgment for the plaintiff in error. *Elwood* v. *Tel. Co.,* 45 N. Y. 549 ; *Lomer* v. *Meeker,* 25 N. Y. 361; *Newton* v. *Pope,* 1 Cowen, 109 ; *Leggate* v. *Hyde,* 58 N. Y. 275; *Swearinger* v. *Pendleton,* 1 Serg. & Rawl. 388; *Railroad Co.* v. *Simpson,* 5 Ohio St. 251 ; Powell on App. Proc. 284; 3 Bac. Abr. 387 ; *Butcher* v. *Porter,* Carthew's Rep. 243 ; *Greene* v. *Cole,* 2 Saunders, 255 ; *Philips* v. *Berry,* 4 Mod. 106 ; Slocomb's Case, 3 Croke, 442 ; *Phelps* v. *Phelps,* 17 Md. 120 ; *Howard* v. *Carpenter,* 22 Md. 249 ; *Ins. Co.* v. *Boykin,* 12 Wall. 433 ; *Pennhallow* v. *Doane,* 3 Dall. 54.

*Mr. Andrew A. Lipscomb* and *Mr. Philip Walker* for the defendant in error :

1. The property was the separate property of Mrs. Elkin, under Sec. 727, R. S. D. C. The vital question is whether the property conveyed to Lucy V. Elkin, by deed of bargain and sale from her brother, who at the same time had received it by deed from her husband, she joining, constituted such property under Sec. 727 R. S. D. C., as she could lawfully dispose of by will, or whether it became her general property subject to her common law disabilities, forbidding her alienation by will.

The fiction of the common law that the husband and wife, being one flesh, cannot convey to each other, has no bearing here, for their legal unity was broken when the property was deeded to Calvert. The usual way under the common law was for the husband to vest the property in a trustee for the use of the wife, she being incapable of holding any realty that might be deeded to her. But that technical necessity no longer exists. He may deed direct to her. *Jones* v. *Clifton*, 101 U. S. 225.

The contention of the plaintiff in error is that although she took by these deeds the legal title to the property she received, she could not devise it, because she acquired it by gift or conveyance from her husband. As a matter of fact she did not so take it. She acquired it by gift or conveyance from her brother, Frederick G. Calvert; and the fact that her husband at some time had owned it and then sold it to her brother, who deeded it to her, would not make her acquire it from her husband. The statute surely cannot mean that, if the husband at any time owned property, which the wife subsequently acquired by gift or purchase from a stranger, it would be construed not to be her separate property because it came through intervening grantees originally from him. The gift or conveyance from the husband referred to in the statute has very properly been held by the Supreme Court of the United States, in *Sykes* v. *Chadwick*, 18 Wall. 141, to mean *voluntary* conveyance.

Applying the reasoning in *Sykes* v. *Chadwick* to the case at bar, it seems clear that Mrs. Elkin by joining with her husband in the deed to Calvert, thus releasing her dower, made this abandonment of her dower a valuable consideration for the deed from Calvert to her, and the property in suit became Mrs. Elkin's statutory separate estate, not acquired by gift or conveyance, that is *voluntary* conveyance, from her husband, in the sense of the statute. That such relinquishment of dower is a valuable consideration for the transfer by the husband of other property or of the same

property to the wife, is thoroughly well settled in the various States.   *Hoot* v. *Sorrell*, 11 Ala. 386 ;  *Brown* v. *Rawlins*, 72 Ind. 505 ;  *Hallowell* v. *Simonson*, 21 Ind. 398 ; 14 Am. and Eng. Ency. of Law, 555, note 8, and the authorities there cited.

That by her relinquishment of dower in this land, and the conveyance of it by Calvert to her, Mrs. Elkin gained a better estate, invalidates the transfer in no degree.   Her husband had the right to make a bad bargain, and, no creditors existing at the time, no one was in a position to attack the adequacy of the consideration.   All that is necessary for this case is that there should have been a valuable consideration.   Certainly the heirs of Mrs. Elkin cannot attack the validity of this deed since they claim under it. Having such statutory separate estate, she could devise it by virtue of the power conferred upon her by Sec. 728, R. S. D. C.

If the property in question were Mrs. Elkin's separate property, no doubt would exist as to her authority to devise it, but if it were not her separate statutory estate, it was at least " her property," and could be devised by her under Sec. 728, R. S. D. C.

2.  In the brief of the plaintiff in error he turns to the original Statutes at Large for a construction of Section 728.   The language of Section 728, R. S. D. C., is plain and unambiguous, and no reference can be made to the original statutes for correction or explanation.   The words that were stricken out of the original act by the revision were just as properly omitted as though by a separate act of Congress.   This is settled by the United States Supreme Court in the case of *United States* v. *Bowen*, 100 U. S. 508.

It is beyond doubt that the Revised Statutes of the District of Columbia, which are but a part of the Revised Statutes of the United States, printed and arranged in a separate volume for convenience, were intended by Congress as a new code of national law.   Section 728, R. S. D. C., is to be

considered alone; but a reference to the Statutes at Large only deepens the conviction that Congress intended to broaden to the fullest extent the testamentary capacity of *femes covert* in the District of Columbia. ·

3. Independently of and prior to the passage of the Married Woman's Act, by the deed to her, Mrs. Elkin took an equitable fee which was devisable. 1 Jar. Wills, *40; *Taylor* v. *Meeks*, 4 D. J. & S. 596; *Cooper* v. *MacDonald*, 7 Ch. Div. 288; Schoul. Wills, 54.

As to the terms necessary to the investing of an equitable separate estate in the wife, no technical language is necessary. " When from the terms of the gift, settlement, or bequest, the property is expressly or by just implication designed to be for her separate and exclusive use, the intention will be fully acted upon, and the rights and interests of the wife sedulously protected in equity." 2 Story Eq. Jur. 626. It has several times been decided in this country that such a separate estate is vested through the words employed in the case at bar: " To her sole use, benefit and behoof." *Fears* v. *Brooks*, 11 Ga. 195; *Guishaber* v. *Hairman*, 2 Bush. (Ky.) 320; *Steel* v. *Steel*, 1 Ired. Eq. (N. C.) 452. This being the case, there can be no doubt that in the transfers in this suit, without the intervention of the Married Woman's Act, the property was deeded to Calvert, and thence to Mrs. Elkin, and returned to Mr. Elkin as trustee, for his life, for his wife, with reversion of the legal title to her on his death; and that she could devise not only the equitable title, but also the reversion contingent upon her husband's death.

4. Calvert as executor had power to sell—conferred by implication.

When a will directs that land be sold, but does not say by whom, if the proceeds are distributable by the executor, either to pay debts or legacies, he has an implied power to sell. Croswell on Executors, Par. 331, 185; Story's Eq. Juris., Vol. II, Par. 1058, 382, note 3.

This has been settled by the Supreme Court of the United

States in the leading case of *Peter* v. *Beverly*, 10 Pet. 532, re-affirmed in *Taylor* v. *Benham*, 5 How. 233; see also *Devoux* v. *Farnig*, 2 John. Ch. 254; *Tylder* v. *Hyde*, 2 Simons & Stuart, 239; *Forbes* v. *Peacock*, 11 Simons' Eng. Ch. 152; 1 Sugden on Powers, 194, Par. 41; 3 Redfield on Wills, 3d Ed. 138, cases cited in note 12; *Lockart* v. *Northington*, 1 Sneed, 316.

5. There was no evidence to show Calvert a mere conduit. No testimony was introduced by the plaintiff to show that Calvert, the brother of Mrs. Elkin, had not for a *bona fide* consideration purchased the property in good faith with a view of making a gift of it to his sister. It cannot be contended, if such were the case, that he did not confer upon Mrs. Elkin a separate estate. Calvert's deed of bargain and sale to Mrs. Elkin cannot be impeached by its mere production; on the contrary, it is presumed to be exactly what it is—a deed of bargain and sale from Calvert to his sister—the adequacy of the consideration could not be questioned in the ejectment proceeding.

6. This court has no power in this case to reverse the judgment and direct judgment to be entered for appellant.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The first question is, from whom and how did Mrs. Lucy V. Elkin, under whom both parties to this action claim, really acquire the property, and what was the nature of the property as she held it? Did she acquire and hold it in her common law right as a *feme covert*, or did she acquire and hold it as her separate statutory estate, as if she were not married, under Section 727 of the Revised Statutes of the United States relating to the District of Columbia? This depends, of course, upon the terms of the statute, and the nature of the transaction as shown by the deeds.

The section of the statute just referred to is part of the revision of what is generally known as the Married Woman's

Act, of the 10th of April, 1869, 16 Stat. 45. The section as it stands in the revision is as follows:

" Sec. 727. In the District the right of any married woman to any property, personal or real, belonging to her at the time of marriage, or acquired during marriage in any other way than *by gift or conveyance from her husband,* shall be as absolute as if she were unmarried, and shall not be subject to the disposal of her husband, nor be liable for his debts."

Now, if the wife acquired the property in question by gift or conveyance from her husband, she did not hold the same as absolutely as if she were unmarried; but she held the same as her general property, as by the common law she was authorized to acquire and hold real estate, and not as her statutory separate estate. And assuming the facts to exist as they are stated in the record, there is no escape from the conclusion that the property was acquired by gift or conveyance from the husband, though it was through the brother of the wife of the grantor as mere medium of transfer of title. There is no attempt to show that there was any real pecuniary consideration for the deeds, and the consideration stated in them is purely of a nominal character; and all the facts attending the transaction show beyond doubt that the real purpose and design of the husband was to transfer from himself to his wife the title to the property. The passing the title through a third party in no manner changed the effect of the transfer. Though the agency of a third party was employed, it was no less, in legal effect and contemplation, a gift or conveyance from the husband to the wife. Indeed, if the exception in the statute could be avoided by adopting such a facile method of conveyance to the wife as that here employed, such exception would simply be rendered nugatory, and would have better been omitted from the statute. The deed, however, to the wife was completely effective, and vested in her the legal title to the property, but she held such property as her general estate, subject to her common law disabilities as a *feme*

*covert.* This has been expressly held, in reference to this very statute, and in a case like the present, where the title to the wife was conveyed by the husband through the medium of a third party. *Kaiser* v. *Stickney*, Bk. 26, L. C. Ed. Sup. Ct. Rep. 76; S. C., 131 U. S. 187, of appendix of previously omitted cases. And so in the case of *Cammack* v. *Carpenter*, 3 App. D. C. 219. These cases, just referred to, arose since the Married Woman's Act of 1869, and were decided in reference to the provisions of that act; and it was expressly held, that the property so acquired by the wife was held by her *as her general property*, which she could only convey by uniting with her husband in a deed executed in the form required by Secs. 450, 451 and 452 of the Revised Statutes relating to the District of Columbia. See, also, the case of *Williams* v. *Reid*, 19 D. C. 46. It is clear, therefore, that Lucy V. Elkin did not acquire and hold the property in controversy under the statute, as if she were unmarried.

2d. It is contended, however, that even though it be conceded that the wife took the property as her general estate, according to the common law, yet the statute clothed her with full power of disposal of the property, either by deed or will. And it is upon the terms of the next succeeding section, 728, of the Revised Statutes of the District, that such contention is founded. That section is in these terms:

"Any married woman may convey, devise, and bequeath her property, or any interest therein, in the same manner and with like effect as if she were unmarried."

Both this and the preceding section, 727, have marginal references to the original act of 1869, Ch. 23, Sec. 1, (16 Stat. 45,) as the source from which the text of the two sections, 727 and 728, was made. There is nothing to indicate, apart from some slight verbal changes, or omissions of phraseology, that there was any design to change or extend the original provision of the act of 1869, Ch. 23, Sec. 1. At most, this change of phraseology could but give rise to a doubt as to the meaning of the statute.

Before this act of Congress of 1869, according to the principles of the common law in force in this District, a married woman had no power or capacity to convey the legal title of her real estate without the joinder of her husband ; nor had she any power or capacity to devise her lands by will, being expressly excepted out of the Statute of Wills of Henry VIII.  She was and is, however, competent to convey or devise by virtue of a power, and she may convey or devise her sole and separate estate in equity, except where restrained by the instrument creating the estate.  Her land held by her as a *feme covert* at the common law, was and is subject to the marital rights of the husband, and if he survives her, after the birth of a child, he is entitled to a life estate in the land by the curtesy.

Has this common law principle, then, been so far radically changed by this act of Congress, that the wife, though acquiring the property as at the common law, and not under the statute, may convey by deed or devise the property as if she were unmarried, and thus deprive the husband of all his marital rights?  It is not seriously contended that this was the effect of the act of 1869, as originally enacted.  But it is supposed that such is the effect of the change made in the phraseology of the revision.

As a rule of construction, it is laid down by the Supreme Court of the United States, that where the meaning of the Revised Statutes is plain, the court will not recur to the original statutes to see if errors were committed in the revision, but may do so to construe doubtful language employed.  *Cambria Iron Co.* v. *Ashburn,* 118 U. S. 54 ; *United States* v. *Lacher,* 134 U. S. 624.

In the last case just referred to, that of *United States* v. *Lacher,* the chief justice, in delivering the opinion of the court, said : " If there be any ambiguity in Section 5467, inasmuch as it is a section of the Revised Statutes, which are merely a compilation of the Statutes of the United States, revised, simplified, arranged and consolidated, resort may be

had to the original statute from which this section was taken to ascertain what, if any, change of phraseology there is, and whether such change should be construed as changing the law. Citing *United States* v. *Bowen*, 100 U. S. 508, 513; *United States* v. *Hirsch*, 100 U. S. 33; *Myer* v. *Car Co.*, 102 U. S. 1, 11. And it is said that this is especially so where the act authorizing the revision directs marginal references, as is the case here. 19 Stat., Ch. 82, Sec. 2, p. 268; Endlich on Int. Statutes, Sec. 51. Accordingly we find that this section took the place of Section 279 of the act of June 8th, 1872."

By the first section of the original act of 1869, Ch. 23, it was enacted that—

" The rights of any married woman to any property, personal or real, belonging to her at the time of marriage, or acquired during marriage, in any other way than by gift or conveyance from her husband, shall be as absolute as if she were a *feme sole*, and shall not be subject to the disposal of her husband, nor be liable for his debts; but such married woman may convey, devise or bequeath *the same*, or any interest therein, in the same manner and with like effect as if she were unmarried."

In the revision this section of the original act has been broken or divided into two short sections, 727 and 728. And the change of phraseology that has occurred does not seem to be more than was necessary and appropriate in making the new arrangement of the subjects-matter of the original section. That, as we have seen, confined the wife's separate power of disposal to *the same property* that she was authorized to acquire under the statute as separate estate. And we think the wife's power of disposal has not been enlarged or extended by the revision beyond what was given her by the original statute; and that did not apply to or embrace property acquired by gift or conveyance from her husband. The wife's power of disposal over property contemplated by the statute is given either by deed or will;

but, as we have seen, it has been held expressly, in cases like the present, that the power of disposition by deed does not exist. *Kaiser* v. *Stickney, supra; Cammack* v. *Carpenter, supra.* And if the power could not be exercised by deed, for the same reason it could not be exercised by will.

3. But it has been contended for the appellee that, independently of the power given by the statute, the wife may dispose of her real estate that she holds to her sole and separate use, either by deed or will; and that the property in this case was held by the wife to her sole and separate use.

It is doubtless true that a married woman can, *in equity*, dispose by deed or will of the equitable fee simple of her real estate, and of the absolute interest in her personal estate, which belong to her for her sole and separate use; since, in respect to such property, she is a *feme sole.* And, in respect to such property, it is immaterial that the legal estate is not vested in trustees, as the husband and all other persons on whom the legal estate may devolve, will be deemed and treated as trustees for the persons to whom the wife has given the equitable interest. This is the established doctrine in the English Chancery, and it is the established doctrine of the courts of this country, to the same extent. *Taylor* v. *Meads,* 4 D., J. & S., 597; *Pride* v. *Bubb.,* L. R. 7 Ch. 64; *Cooper* v. *Macdonald,* 7 Chan. D. 288; 2 Sto. Eq. Juris., Sec. 1380. If the gift or conveyance be designed to be for the wife's separate and exclusive use, that intention will be fully acted upon and carried into effect. But the question is, whether the instrument of conveyance shows plainly that to have been the intention of the parties to it; for, as said by Judge Story, "the purpose must clearly appear beyond any reasonable doubt; otherwise the husband will retain his ordinary legal and marital rights in the property." Indeed, in all cases, the words must manifest an unequivocal intent to exclude the power and marital rights of the husband. 2 Sto. Eq. Juris., Secs. 1381, 1382.

But here, unfortunately for the defendant, there is nothing in the deed from Calvert to Mrs. Elkin to create a sole and separate estate in her, to the exclusion of the marital rights of the husband. The only clause in the deed which could possibly be supposed to have any such effect, is the ordinary *habendum* clause, which declares that the property was to be held " unto the said party of the second part, *her heirs and assigns*, to and for her *and their sole use, benefit and behoof forever.*" This is but a common formula found transcribed in all the several deeds in the record ; the deed from Quinter to Abram Elkin, Jr., for the property in question, appearing to furnish the precedent for all the subsequent deeds for the same property. It clearly has no such effect as that of declaring a sole and separate estate in the wife. In the case already referred to, of *Kaiser* v. *Stickney, supra,* the deed to the wife contained the same formal *habendum* clause as that of the present deed, but it was not contended, nor even suggested, that it was sufficient to create a separate and exclusive estate in the wife.

If, however, the deed contained an effective clause, creating a sole and separate estate, it could not avail the defendant in this action ; for in an action of ejectment a legal estate or title is as necessary, when title is relied on as a defense, as is such an estate or title to the right of the plaintiff to recover. A mere equitable estate could not be set up to defeat the legal estate.

4. It has been contended by the plaintiff here, the present appellant, that even assuming that Mrs. Elkin had power to dispose of the property by will, the executor named in the will had no power of sale, and that the sale made by him, therefore, was simply void. But in this we do not agree. If the right to make the devise of the estate existed, the testatrix directed her property, real and personal, to be sold, and after deducting funeral and other expenses, she directed how the proceeds of the sale should be distributed and paid out. The making of this distribution was a proper duty of the

executor; and it is clear, we think, that the executor named in the will would have power to sell and convey the real estate, as he would haye of the personal estate, raised by necessary implication. This would seem to be the settled construction of similar devises or directions to sell, without express power conferred. *Magruder* v. *Peter,* 11 Gill & John. 217; *Peter* v. *Beverly,* 10 Pet. 532; *Taylor* v. *Benham,* 5 How. 233.

Inasmuch as this case must be sent back to the court below for retrial, it is proper to advert to a question that must arise in the course of the trial, and that is, the question as to the right of entry of the plaintiff. That right depends upon the question, whether the husband of Mrs. Lucy V. Elkin is dead or alive. If alive, upon the assumption that Mrs. Elkin was without power to devise the property, he would be entitled to his life estate by the curtesy, and until the termination of that estate, the plaintiff would have no right of entry in her character of heir-at-law of her mother, and, consequently, no right to maintain an action of ejectment. To maintain the action, the death of the father must be shown, either by positive proof or presumption.

The judgment appealed from must be reversed, and a new trial awarded.

*Judgment reversed, with cost to the appellant, and a new trial awarded.*