### MYER v. CAR COMPANY.

A railroad company in Iowa, after executing a mortgage to secure its bonds, which was duly recorded, covering all the property which it then possessed or might thereafter acquire, entered into a written contract with A., leasing for a specific period and at a stipulated sum, payable monthly, certain cars whereof he was the owner. It also reserved but did not exercise the privilege of purchasing them at the original cost at any time during the existence of the contract. A. retained the right to rescind the contract, if the company failed to pay the interest on its bonds. While the contract was in force, the mortgagee filed his bill of foreclosure. The court appointed a receiver, who took charge of the road and used the cars in operating it. The contract was never recorded. *Held,* 1. That the contract was binding between the parties thereto, and the failure to record it did not, under the statute of Iowa, render the cars subject to the lien of the mortgage. 2. That A. was entitled to the possession of them, and to compensation for their use by the receiver, payable out of the fund to the credit of the suit.

APPEAL from the Circuit Court of the United States for the District of Iowa.

This was a bill, filed May 4, 1875, to foreclose a mortgage executed May 12, 1871, by the Davenport and St. Paul Railroad Company, to secure the payment of certain of its bonds. The mortgage was in the usual form, covering, with other property specifically set forth, the road, bridges, and superstructure of the railroad, with all branches, side-tracks, additions, turnouts, right of way, depot grounds, and other lands then owned or thereafter to be acquired by the company; all

depots, car-houses, car-shops, machine-shops, and all other buildings whatsoever, then erected or thereafter to be erected; also all kinds of machinery and tools then held and owned or thereafter to be acquired by the company for use in connection with the railroad, including all cars or other rolling-stock or equipment, and all materials for use in constructing, operating, repairing, or replacing any part or parcel of said railroad or any part of its appurtenances; also all property and franchises connected with or relating to the railroad, or any part of its business in any wise whatever, which was then held or thereafter to be acquired by the company, &c.

The company subsequently entered into the following contract:—

"Articles of agreement concluded this first day of October, A.D. 1873, by and between the Western Car Company, party of the first part, and the Davenport and St. Paul Railroad Company, party of the second part, witnesseth:

"That for and in consideration of the promises and agreements of the said second party hereinafter mentioned, the said first party hereby hires to said second party ninety railroad cars, as follows, viz.: eighty box cars, Nos. 121 to 200 (inclusive), and ten stock cars, Nos. 301 to 310 (inclusive); said ninety cars having been the property of the Western Car Company Association, and by them delivered to the party of the second part at dates previous to Feb. 15, 1873, as per receipts of said second party, and the ownership of said cars having afterward been transferred to the party of the first part, all of said cars being marked $\left(\begin{smallmatrix} X \\ W \end{smallmatrix}\right)$.

"It is understood and agreed by the parties hereto that the said ninety cars are to be used by said second party in its regular business of transportation over its own and other railroads for the term of five years from the date of this contract, which shall be renewed on the expiration of said five years on like agreements and conditions as those of this contract upon the request of either of the parties, hereto, a written notice of such request to be given by the party making it on the other party not less than one year previous to the expiration of said five years. In consideration whereof the said second party hereby promises and agrees —

"First, To pay the said first party as rental for the use of each of said cars twenty dollars for each and every month during the existence of this contract and its renewal, if renewed; said payments to

be made to such person on behalf of said first party as it shall designate in writing from time to time, and until otherwise so designated to the secretary of said first party; and the receipts of such payments of said person so designated, or said secretary of said first party, as the case may be, shall be the only evidence of such payments said first party shall require of said second party therefor.

"Second, In case any of said cars shall be destroyed, or so disabled by accident or otherwise as to be unfit for safe and proper use, at any time during the existence of this contract, or the renewed contract, if renewed, the said second party shall, at its *own* expense, immediately replace such destroyed or disabled cars with an equal number of like cars of equally good material, construction, and value, in all respects as were those so destroyed or disabled before the destruction or disabling of the same, and shall have said replacing cars numbered, lettered, and marked as were the said destroyed or disabled cars. Each and all of said replacing cars shall become and be the property of said party of the first part, the same as were the destroyed or disabled cars they shall have replaced.

"Third, The said second party shall, at its own expense, maintain and keep each and all of said ninety cars during the existence of this contract and its renewal, if renewed, in good repair and in safe and proper running order, and at its own expense furnish all the material for and make all renewals of said cars from time to time, as they shall be needed, to put and keep them in proper condition for regular use, said material to be in every respect equal in quality to the material for like purposes originally used in the construction of said cars, and at the termination of this contract or the renewed contract, if renewed, return said cars to the party of the first part in proper condition and repair for the immediate and active use thereof.

"It being understood and agreed between the parties to this contract that said second party may and hereby reserves the privilege of purchasing said cars at any time during the existence of this contract, or the renewal thereof, if renewed, by paying, or securing to be paid to said first party, to its satisfaction, the original cost thereof.

"It is understood and agreed between the parties hereto that to preserve the evidence of the ownership of said cars in the said first party they shall be severally marked or lettered as follows, viz. Ⓦ, which shall be in addition to any marking or lettering of said

cars. said second party may make for its convenience. In case the said second party shall fail at any time during the existence of this contract, or the renewed contract, if renewed, to promptly pay the interest on the principal of any of its bonds or other liabilities when the same shall have respectively become due, the said first party may, if it so elect, terminate this contract immediately after such default, by written notice of the president of said first party to the president or secretary of said second party, personally served on said president or secretary, or sent to either of them by the United States mail, and the said second party agrees on the service of said written notice as aforesaid to deliver forthwith to said first party the actual possession as the owner thereof of each and all of said ninety cars, and those with which said second party shall have replaced the same, each and all of which cars shall, on such delivery, be in proper condition and repair for the immediate and active use thereof.

"THE WESTERN CAR COMPANY,
"By B. E. SMITH, *Pres't.*
"Attest:
"E. C. SMITH, *Sec'y.*
"THE DAVENPORT & ST. PAUL R. R. Co.,
"By GEO. H. FRENCH, *Pres't.*
"Attest:
"J. S. CONNOR, *Sec'y.*"

The court appointed a receiver, who took charge of the road and said cars.

The Western Car Company filed an answer and a cross-bill claiming title and right of possession to the cars, and compensation for the use of them by the receiver. The Western Car Company Association originally leased ninety cars to the railroad company, and became a corporation under the name of The Western Car Company, under a charter granted by the State of Delaware. An agreed statement was filed in the court below, setting forth the following facts: The cars were delivered to the railroad company under a conditional contract or lease with the Western Car Company Association, between Feb. 8, 1872, and Feb. 15, 1873; $22,179.02 was paid for the rent thereof prior to Oct. 1, 1873, under a similar lease or contract to that of Oct. 1, 1873; the Western Car Company was formed at or prior to Oct. 1, 1873, and the foregoing contract was executed between it and the railroad company; the words

"having been the property of the Western Car Company Association, and by them delivered" to the said railroad company, mentioned in that contract, refer to the delivery above named, and the car company claims title to and rent for the cars under the contract of Oct. 1, 1873. The trustees of the bondholders claim title under the mortgage dated May 12, 1871, which was duly recorded. The contract of Oct. 1, 1873, was never recorded. The receiver has paid no rent for the cars, and they were marked as stated in that contract.

The cars were all in use by the railroad company, and were constantly passing, in and for its business to Chicago and back, on the Chicago and Northwestern Railroad, and in carrying and earning freight for the Davenport and St. Paul road up to the time of the receiver's appointment. Some parties, in a proceeding against the Chicago and Northwestern Railroad Company, garnished the cars, and the court below made an order on that company to deliver them to the receiver. Before the order was executed, the car company applied to the court to direct a payment of rent to them by the receiver. When the court refused to do so, that company, through the same attorneys who applied for rent, replevied fifty-eight of the cars from the Chicago and Northwestern Railroad Company by writ from the Circuit Court of the United States for the Northern District of Illinois. B. E. Smith was, Oct. 1, 1873, president of the car company, and of the Davenport Railway Construction Company, and a stockholder in the Davenport and St. Paul Railroad Company. At that date, George H. French was president of the latter company, and secretary of the Construction Company.

It was further agreed that if the court decided that the car company was entitled to the cars, the amount of rent was to be fixed by a reference to such competent person as the court might select.

The court found that the said ninety cars leased by the railroad company from the Western Car Company, at all times had been and then were the property of the latter company, and that it was entitled to the immediate possession thereof. The court thereupon adjudged that the complainants' bill be dismissed as against the car company.

The court further found that of the said ninety cars fifty-six had come into the possession of the car company under and by virtue of said writ of replevin; that thirty-four of them were then, and had been since the filing of the bill, in the possession of the receiver appointed by the court, but that two of them were subject to the lien of the deed of trust under which the complainants claim. It was adjudged and decreed that the receiver immediately surrender and deliver up unto the car company the remaining thirty-two cars.

It having been stipulated by the parties that the value of the use of the said thirty-two cars, since and while they were in the possession of and in use by the receiver of the court, was $10 per car for each month since March, 1875, a period of twenty-six months, it was further adjudged and decreed that the car company do have and recover for such use the sum of $8,320; and the receiver was ordered and directed to pay over the said moneys to the said company.

Myer and Dennison, the trustees named in the mortgage, thereupon appealed to this court.

Sect. 1922 of the Revised Code of Iowa of 1873 is as follows:—

"That no sale, contract, or lease, wherein the transfer of title or ownership of personal property is made to depend upon any condition, shall be valid against any creditor or purchaser of the vendee or lessee in actual possession obtained in pursuance thereof, without notice, unless the same be in writing, executed by the vendor or lessor, acknowledged and recorded the same as chattel mortgages."

It is a transcript of an act having for its title "An Act requiring conditional sales of personal property to be executed, acknowledged, and recorded like mortgages of personal property, to be of any validity as against *bona fide* purchasers, executions, and attaching creditors."

*Mr. Joseph H. Choate* and *Mr. James Grant* for the appellants.

By the true and fair construction of its terms, the statute of Iowa applies to this case. It invalidates the title or right of recovery of the lessor, as against the prior mortgagees, and

makes their title as creditors superior to that of the actual owner.

*a.* The title of the original act does not control the enacting clause. The latter is free from all ambiguity, and secures the benefit of its provisions to " any creditor." Potter's Dwarris on Statutes, pp. 265–270 ; *Mace* v. *Cadell*, Cowp. 232 ; Sedgwick, Statutes, pp. 50–52.

*b.* Although *United States* v. *New Orleans Railroad* (12 Wall. 362) holds that, as a general rule of equity, the mortgagee in such a mortgage must take after-acquired property *cum onere*, the express terms of this statute create a clear exception to that rule. *United States Wind Engine Co.* v. *Burlington, &c. Railway Co.*, 4 Dill. 580.

*c.* The contract in question comes directly within those terms. It is " a contract or lease wherein the transfer of title or ownership of personal property is made to depend upon a condition," and the " lessee or vendee was in actual possession, obtained in pursuance thereof without notice" to creditors.

The condition, on which the transfer of title is made to depend, is the payment of the original cost. At any time during the lease, by performing this condition, the lessee is to become the owner of the cars.

The purposes of the statute are to be considered. Like all similar legislation which aims at prohibiting the separation of the apparent or reputed title from the real ownership, it is to be construed for the prevention of fraud upon creditors and others, who rely upon the apparent ownership, which the possession and use of chattels indicate. Had an actual purchaser bought and paid for the cars, there can be no question that his title would be sustained as against the real owner, and the statute expressly puts " any creditor" in the same position.

The principle of such statutes is that a divorce of the apparent ownership, manifested by possession, from the actual ownership, shall not avail as against creditors who rely upon the possession.

In *Twyne's Case* (3 Co. 87), it was resolved that such statutes made against fraud must be liberally and beneficially expounded, and that the whole instrument must be taken together to ascertain its meaning.

The statute of Iowa does not contemplate a consummated sale and purchase, but a contract or lease whereby the transfer of title is made to depend upon a condition. This exact feature is found in this contract. Whenever the lessee pays or secures the original cost of the cars, they are to be its property. This is an executory agreement binding on the lessor during the whole term of the lease. The statute dispenses in favor of creditors of the lessee with the performance of the condition, if the contract, as in this case, be not recorded.

Leases wherein payment of rent to the amount of a fixed purchase-price is stipulated for have frequently been held to be within the statute. *Sewing-Machine Company* v. *Holcomb*, 40 Iowa, 33; *Mosely* v. *Shattuck*, 43 id. 540; *Lucas* v. *Campbell*, 88 Ill. 447; *Latham* v. *Sumner*, 89 id. 233; *Hervey* v. *Rhode Island Locomotive Works*, 93 U. S. 664. The distinguishing feature of these cases is that the rent for which the lessee is bound is paid and received as part of the purchase-money, and that when he, by paying the whole amount, has performed the condition on which the transfer of title is made to depend, the property becomes his.

The statute of Iowa covers not only that case, but every case where the contract under which possession is taken contains a condition on the performance of which the title is to pass to the party in possession, although he may not be bound to perform the condition.

A conditional sale does not require a mutual and binding agreement of sale and purchase. It means an agreement of sale, provided the contemplated purchaser performs the prescribed condition. *Horn* v. *Baker*, 9 East, 215; *Strong* v. *Taylor*, 2 Hill (N. Y.), 326; *Herring* v. *Willard*, 2 Sandf. (N. Y.) 418.

The court cannot, to palliate the supposed hardships of a particular case, annul the express provisions of the statute of Iowa. This it would do if it held that Myer and Dennison were not " creditors " in the sense of that statute.

*d.* The lease provides that the lessee may at any time during its continuance become the owner of the cars on payment of the original cost. Is not some light shed upon this

singular provision by the stipulation filed in the court below showing that the actual value of the rent of them was just one-half of that reserved by the lease? Doubtless, therefore, long before the receiver took possession, the lessor had received in excessive rent their full original cost, and the plea of hardship in losing them wholly fails.

*Mr. Robert G. Ingersoll* and *Mr. John M. Butler, contra.*

Mr. Chief Justice Waite delivered the opinion of the court.

We consider it unnecessary to decide in this case whether a lease of personal property at a specified rent, with an option in the lessee to buy for a fixed price, is in legal effect a conditional sale; because, even if it be, the decree below is in our opinion right. In *Fosdick* v. *Schall* (99 U. S. 235), a case which came up from Illinois, we decided that such a contract of sale, if not recorded in accordance with the requirements of the chattel-mortgage acts, was legal and valid as between the parties, and that under a mortgage reaching after-acquired property the mortgagee would take such property subject to all the conditions with which it was incumbered when it came into the hands of the mortgagor. The statute we were then considering was as follows:—

"That no mortgage, trust-deed, or other conveyance of personal property, having the effect of a mortgage or lien upon such property, shall be valid as against the rights and interests of any third person, unless possession thereof shall be delivered to and remain with the grantee, or the instrument shall provide for the possession of the property to remain with the grantor, and the instrument is acknowledged and recorded as hereinafter directed; and every such instrument shall, for the purposes of this act, be deemed a chattel mortgage." Rev. Stat. Ill., 1874, p. 711.

Under this statute the courts of Illinois have uniformly held that contracts of conditional sale are in effect, so far as the chattel-mortgage acts are concerned, the same as though a formal bill of sale had been executed and a mortgage given back to secure the purchase-money. So that the question we were then called on to decide was whether one holding as a

mortgagee of after-acquired property was a "third person" within the meaning of that law.

The statute of Iowa which is involved in the present case is as follows : —

"That no sale, contract, or lease, wherein the transfer of title or ownership of personal property is made to depend upon any condition, shall be valid against any creditor or purchaser of the vendee or lessee, in actual possession obtained in pursuance thereof, without notice, unless the same be in writing, executed by the vendor or lessor, acknowledged and recorded the same as chattel mortgages." Code of 1873, sect. 1922, p. 356; Acts of Fourteenth General Assembly, c. 63, p. 69.

It will thus be seen that the statutes of the two States are substantially alike, unless a different meaning is given the term "third person," used in the one, from that of "creditor or purchaser," found in the other. If these terms are the same in legal effect, the principal question involved in this case has already been settled here.

In *Fosdick* v. *Schall* we held that a mortgagee whose mortgage embraced property to be acquired in the future was in no sense a purchaser of such property. His rights were not granted after the property was bought by the mortgagor. He got nothing by this provision in his mortgage except what the mortgagor himself had acquired. He paid nothing for his new security. He took as mortgagee just such title as the mortgagor had; no more, no less. The code of Iowa, sect. 1283, authorized mortgages of property afterwards to be acquired, and made them as valid and effectual as if the property were in possession at the time of the execution thereof; but this does not change the case. The question still is, what property has been acquired to which the mortgage can attach.

We think, therefore, that the word "purchaser" in the Iowa statute gives the appellants no rights other than those to which they would be entitled under like circumstances in Illinois

Every mortgagee is necessarily a creditor. A mortgage is in general but an incident to the debt it secures, and the mortgagee is nothing more than a creditor secured by mort-

gage. These appellants are mortgagees; but, as has just been seen, their mortgage gives them no rights to the property in dispute against the car company, the lessor, or conditional vendor. Their claim is only such as belongs to creditors of the railroad company, the lessee, or conditional vendee. So far as any rights they have as simple creditors are concerned, the railroad company could do with the property just what it pleased. It might have been surrendered to the car company or sold to another. The car company, too, could have taken possession under its lien, and held against any proceeding these creditors might afterwards commence as mere creditors. Unless a creditor is in a condition to prevent the vendee from controlling his property, he is powerless, and the vendor and vendee may contract with each other as they please without consulting him. It follows that although the word "creditor" appears in the statute, it must have been used with some limitation. This makes it necessary to inquire what that limitation was.

The statute as we now find it is part of the code of Iowa adopted in 1873. This code, like the Revised Statutes of the United States, was in reality only a convenient compilation or codification of laws before that time in force. In the brief of counsel for the appellants, it is stated in terms that the particular section of the code now in question (sect. 1922) is a copy of chapter 63 of the acts of the Fourteenth General Assembly.

In relation to the Revised Statutes of the United States, we held, in *United States* v. *Bowen* (100 U. S. 508), that "when it becomes necessary to construe language in the revision which leaves a substantial doubt as to its meaning, the original statute may be resorted to for the purpose of ascertaining that meaning." The same rule is applicable to the Iowa code, and there is a substantial doubt here as to what the word "creditor" means. Looking then to the original act, we find the text the same as the code; but the title, omitted in the codification, is as follows: "An Act requiring conditional sales of personal property to be recorded like mortgages of personal property to be of any validity as against *bona fide* purchasers, execution and attaching creditors." In cases of doubt the title

might always be resorted to for the purpose of ascertaining the meaning of the body of the act ; but especially is this true in States like Iowa, where the constitution provides that " every act shall embrace but one subject and matters properly connected therewith ; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void, only as to so much thereof as shall not be expressed in the title." Art. 3, sect. 29. This leaves no doubt, and clearly confines the operation of the text to such creditors as have by suit perfected a right to impeach the transaction. Such has always been the rule in respect to conveyances made to hinder and delay creditors. Until suit was commenced, the parties were at liberty to deal as they pleased with the property conveyed, and the rights of creditors were determined by the condition in which the property was when they interfered. It is clear, therefore, that these appellants, as creditors at large, had acquired no such special interest in the property, when their bill to foreclose their mortgage was filed, as would give them the right to contest the validity of the car company's title. As against them, in the condition they were, the lien created by the conditional sale was to all intents and purposes valid and subsisting when the receiver, on his appointment, took possession of the property ; and his possession, as we said in *Fosdick* v. *Schall*, was for the benefit of whomsoever in the end it should be found to concern. The rights of the parties were fixed at the moment the property was taken by the court through its receiver into its own possession. At that time these appellants were not either execution or attaching creditors. They had not then, neither have they since, sued as any other than mortgage creditors endeavoring to enforce their mortgage lien. We conclude, therefore, that the statute of Iowa has a no more extended operation, so far as the circumstances of this case are concerned, than that of Illinois, and that under our former decision the appellants stand precisely where the railroad company would in a controversy with its vendor. To our minds it is unimportant that under the railroad mortgage laws of Iowa " the rolling-stock and personal property of the company, properly belonging to the road and appertaining thereto,

shall be deemed a part of the road," for the purposes of a mort-
gage. Such personal property is still " loose property, suscep-
tible of separate ownership and separate liens," and it is only
such interest as " properly belongs " to the company that the
authorized mortgage reaches. The evident purpose of the act
was to do no more than prevent confusion growing out of any
difference there might be between recording acts having refer-
ence to personal prop rty and those affecting real estate. This
disposes of the principal question in the case.

The money recovery below was only for the use of the cars
by the receiver during the receivership, and the amount was
substantially agreed on. In other words, it is in effect ad-
mitted that the use of the cars was worth to the court while
operating the road under the trust created by the appointment
of a receiver, at the instance of these appellants, just what has
been decreed. There can be no doubt that it is the duty of
a court to pay from the trust fund it has in possession all the
debts it incurred in its judicial capacity while administering
the trust assumed, pending the litigation, in behalf of the liti-
gating parties. The objection here is not that the fund in
hand did not incur the debt, the payment of which has been
ordered, but that the railroad company, while operating the
road before the receivership, paid the car company too large a
sum for the use of its cars, and that the debt of the fund should
be reduced by the amount of this improvident and excessive
payment. There is nothing in the case as it has been brought
here by the appeal which will enable us to determine whether
the car company ought to contribute anything to the fund in
court on this account or not. It is sufficient for our purposes
on this appeal that an authorized officer of the court has in a
legitimate way charged the fund in hand with the debt, the
payment of which has been ordered, and that it has not been
proved that the car company owes the railroad company for
over-payments made before the receivership was created.

It is impossible for us to determine from anything now here
whether the receiver is indebted to the car company for the
use of the cars in question after the decree below, or whether
the purchaser of the railroad property under the mortgage has
used the cars pending the appeal, or that he can, in this suit,

be required to make compensation therefor. All those questions will properly come before the court below for determination on the law and the facts when the case goes down.

*Decree affirmed.*