## THE MUTUAL AID, LOAN AND INVESTMENT CO. v. LOGAN.

CONSTRUCTION OF STATUTES—USURY—RETROACTIVE STATUTES.—THE
ACT OF 1898, 22 Stat., 747, providing for construction of contracts secured by mortgage of real estate, is not retroactive. *Tobin* v. *McNab,* 53 S. C., 73, *followed.*

Before KLUGH, J., Greenville, March, 1899. Reversed.

Foreclosure by The Mutual Aid, Loan and Investment Co. of Atlanta, Ga., against Eliza Logan. The Circuit decree, omitting the formal parts, is as follows:

This action was commenced on the 15th day of June, 1898. The defense interposed is usury. The master decided that the contract was governed according to the laws of Georgia, and under the cases of Association *v.* Vance and other subsequent decisions following it, that the defense of

usury should not be sustained. He, therefore, recommended a judgment of foreclosure for the entire amount claimed, with interest and attorneys' fees. The defendant excepted to the master's report, and the question is before me for decision. The contract in question was to be performed at the home office of the company, Atlanta, Georgia; the dues were payable there, and the local agent was designated as the agent of the borrower to transmit the funds there when paid to him. I do not lay much stress on this last palpable evasion and subterfuge, but according to the terms of the contract it was to be performed in Georgia, and this is controlling to a certain extent, as we shall see. If this were all to be considered, the cases cited by the plaintiff's counsel and referred to in the master's report, would be conclusive of the point at issue.

The General Assembly of South Carolina, at its session in 1898 (see XXII. Stat.), passed an act requiring the Courts to construe all contracts secured by a mortgage of real estate situated in South Carolina, by the laws of South Carolina. It specifically refers to the question of interest, and, coming so soon after the decision of Association *v.* Vance, the inference is plain that the intention of the legislature was to change the policy indicated by the Supreme Court in that case. The plaintiff contends that the act of 1898 was passed after the contracts in question were entered into, and that to allow that act to affect the contract sued upon would divest vested rights and violate the obligations of the contract. At first blush the plaintiff appears to be right, but a careful analysis of the question has convinced me that it does neither. So far as this question is concerned, I can see very little distinction between divesting vested rights and violating the obligation of the contract. The right which would be divested and the obligation of the contract which would be violated are almost inseparable. The right of the plaintiff was to come into a South Carolina Court and *demand* that the mortgage be foreclosed; at the same time, *asking* that the South Carolina Court give due effect to the statute

of Georgia, which declares that contracts like the one under discussion are not usurious.    So far as this statute is concerned, the plaintiff, even before our act of 1898, would come into our Courts as a suppliant and not as one clothed with a strict legal right.    It is well settled that statute law can in no case have any force or effect, *ex proprio vigore,* beyond the limits of the enacting State.    It halts at the State line, and can only enter the foreign State by the latter's consent.    (3 Am. and Eng. Enc. L., 1st ed., 504, 509.)    Whatever extra territorial force or effect it may have is referable solely to the doctrine of comity of nations.    The vested right about to be divested is then solely the right on the part of the plaintiff to force a South Carolina Court to give effect to a Georgia statute in construing this contract, which, as we shall see, is no *right* at all, in the strict sense of the term.    That which the plaintiff claims to be a part of the obligation of the contract is simply an incident of the contract, depending upon the will of the foreign State.    The obligation of a contract is its binding force, that element founded on strict legal right which a party to the contract may *demand;* not a feature of the contract depending for its enforcement upon the imperfect obligation of comity or courtesy.    As Judge Story says: "Like that of beneficence, humanity and charity."    "The laws of a country can have no intrinsic force, *proprio vigore,* except within the territorial limits and jurisdiction of that country, and can bind only its own subjects and such others as are within the jurisdictional limits while they remain therein.    No other nation, nor the subjects of any other nation, are bound to yield the slightest obedience to those laws; and whatever extra-territorial force they may have, is not the result of any inherent power to extend them abroad, but of that respect which from motives of public policy other nations yield to them."    3 Am. and Eng. Enc. L., 509.    Or as stated by the Supreme Court of the United States: "No law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived.    The extent to which the law of one nation, as put in force within its

territory, whether by executive order, by legislative act or by judicial decree, shall be allowed to operate within the dominion of another nation, depends upon what our greatest jurists have been content to call the 'comity of nations.' " *Hilton* v. *Guyot,* 159 U. S., 163. "All the effect which foreign laws can have in the territory of a State depends absolutely on the express or tacit consent of that State." Wharton Int. Law, sec. 78. Depending, then, entirely upon the comity of the nation or State whose Courts are asked to enforce the foreign statute, it becomes necessary to inquire into the extent, the efficacy and the binding force or characteristics of that comity. What is it? The Supreme Court of the United States says: "Comity, in the legal sense, is neither a matter of absolute obligation on the one hand, nor of mere courtesy and good will on the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or to the persons who are under the protection of its laws." *Hilton* v. *Guyot* (*supra*). Judge Story says: "It has been thought by some jurists that the term *comity* is not sufficiently expressive of the obligation of nations to give effect to foreign laws when they are not prejudicial to their own rights and interests. And it has been suggested that the doctrine rests upon a deeper foundation—that it is not so much a matter of comity or courtesy as a matter of paramount moral duty. Now, assuming that such a moral duty does exist, it is clearly one of imperfect obligation, like that of beneficence, humanity and charity. Every nation must be the final judge for itself, not only of the nature and extent of the duty, but of the occasions on which its exercise may be justly demanded. * * * There is, then, not only no impropriety in the use of the phrase 'comity of nations,' but it is the most appropriate phrase to express the true foundation and extent of the obligation of the laws of one nation within the territories of another." Story Confl. Laws, secs. 33-38. Quoted with ap-

proval in *Hilton* v. *Guyot* (*supra*).   "It is in the strictest
sense simply a' matter of the comity of nations, and not of
any absolute paramount obligation superseding all discretion
on the subject."   3 Am. and Eng. Enc. L., 508.   "The
enforcement of a foreign law and contracts dependent
thereon for validity within another jurisdiction and by the
courts of another nation, is not to be demanded as a matter
of strict right.   It is permitted, if at all, only from the
comity which exists between States and nations.   Every
independent community must judge for itself how far this
comity ought to extend."   *Flag* v. *Baldwin,* 38 N. J. Eq.,
219; *Same case,* 48 Am. Rep., 308.   It must be borne in
mind that the principle invoked is a comity of nations and
not a comity of courts.   The *Courts* of South Carolina are
not supposed to entertain sentiments of comity toward the
State of Georgia.   That can only be done by the *State* of
South Carolina.   It often happens that the Courts act on
what is supposed or presumed to be the comity of one State
toward another, in the absence of an express declaration of
policy by the State.   That at best is but a presumption, and
when the legislative will is made known, the presumption
necessarily vanishes.   "This comity, it has beeen well rea-
soned, is the comity of *States* and not the comity of *Courts.*
In other words, the power of determining whether, how far,
with what modification, or on what conditions, the laws of
one State, or any rights dependent upon them, shall be recog-
nized in another State, is a legislative power.   The conclu-
sion, then, is that the judiciary must be guided in determin-
ing the question by the practice and policy adopted by the
legislature."   6 Thomp. Corp., sec. 7884.   "In the silence
of any positive rule, affirming or denying or restraining the
operation of foreign laws, Courts of justice presume the tacit
adoption of them by their own government, unless they are
repugnant to its policy or prejudicial to its interests.   It is
not the comity of the Courts but the comity of the nations
which is administered and ascertained in the same way, and
guided by the same reasoning by which all the principles of

municipal law are ascertained and guided." Story Confl. L., secs. 36-7. Quoted in *Bank* v. *Earle,* 13 Pet., 589. "And when (as without doubt must occasionally happen) the interest or policy of any State requires it to restrict the rule, it has but to declare its will and the legal presumption is at once at an end." *Bank* v. *Earle,* 13 Pet., 590. The legislature has spoken the express will of the State of South Carolina upon this question, and in no uncertain terms declares what is the policy of this State. The act is remedial in its nature, and is intended to cut up, root and branch, the immunity enjoyed by foreign corporations which is denied to a citizen or corporation of this State. It cannot be doubted—in fact, it was admitted by plaintiff's counsel at the hearing—that the contract under South Carolina law would be usurious. *Association* v. *Dorsey,* 15 S. C. Shall the Courts of this State, in view of the positive legislation of 1898, intended to cover all cases and conform all parties to South Carolina law, allow the statutes of Georgia to have full efficacy in South Carolina? Our own Court has spoken in no uncertain way: "The laws of a State are limited to its territory. As a rule, it administers its own laws. But it sometimes happens that the judiciary of one State is called upon to administer the laws of another. Certain rules of comity have been adopted by common consent, and are generally followed. * * * The rule is clearly stated by Chancellor Kent with its qualifications: Then it may be laid down as the settled doctrine of public law that personal contracts are to have the same validity, interpretation and obligatory force in any other country which they have in the country where they are made. * * * It is, however, a necessary exception to the universality of the rule, that no people are bound or ought to enforce or hold valid in their Courts of justice any contract which is injurious to their public rights, or offends their morals, or contravenes their policy, or violates a public law." *Thornton* v. *Dean,* 19 S. C. R., 587. "The enforcement by one nation of contracts made under the laws of another, rests on the principle of comity, which can-

not be so far extended as to violate the positive legislation of the nation called on to enforce such contracts." *Gist* v. *Tel. Co.*, 45 S. C. R., 369. "It is the voluntary act of the nation by which it is offered, and is inadmissible when contrary to its policy or prejudicial to its interests." *Bank* v. *Earle*, 13 Pet., 589. "The enforcement by one nation of contracts made under the laws of another rests on the principles of comity, which cannot be so far extended as to violate the positive legislation of the nation called on to enforce such contract." *Ivey* v. *Lalland*, 42 Miss., 444. "This comity is the purely voluntary act of the nation or State, and is totally inadmissible when the laws of the foreign State or nation are contrary to its policy or prejudicial to its interests." 3 Am. and Eng. Enc. L., 505. I feel impelled, therefore, by the act of 1898, to construe this contract according to the laws of South Carolina. Thus construed, it is clearly usurious.

From this decree, plaintiff appeals.

*Messrs. Haynsworth, Parker &. Patterson,* for appellant, cite: *Contract is free from usury under laws of Ga.:* 46 Ga., 166; 94 Ga., 562; 96 Ga., 206, 803; 30 S. E. R., 911. *And should be construed under Ga. laws:* 49 S. C., 402; 50 S. C., 303; 51 S. C., 33. *Act of 1898 does not affect this contract:* art. 1, sec. 10, Con. U. S.; 15 Mass., 447; 16 How., 432; 1 Wall., 175. *Principles of comity cannot be so altered as to affect contracts previously made:* 13 Pet., 589; 4 Wheat., 122. *Is act of 1898 intended to be retroactive?* 18 S. C., 481; 22 S. C., 504; 7 Johns., 477; 13 Rich. L., 277.

*Messrs. Wells, Ansel & Cothran,* contra.

June 3, 1899. The opinion of the Court was delivered by

MR. JUSTICE GARY. The practical question raised by the exceptions is whether the Circuit Judge erred in deciding that the act of 1898, 22 Stat., 747, was applicable to this case, in which the mortgage was executed before the passage of

said act. That act is entitled: "An act to construe contracts secured by mortgage of real estate situate within this State," and is as follows: "All contracts secured by mortgage of real estate situate within this State, shall be subject to and construed by the laws of this State, regulating the rate of interest allowed, and in all other respects without regard to the place named for the performance of the same." In the case of *Curtis* v. *Renneker,* 34 S. C., 468, the inquiry was whether the legislature intended that the statute, therein mentioned, should have a retroactive operation, and the rule of construction was thus clearly expressed by Mr. Chief Justice McIver: "The rule that a statute will never be given such a construction unless it is required by the express words of the statute, or must necessarily be implied from such words, is too well settled to need the citation of any authority to support it. Now it is quite certain that there are no express words in the statute evidencing an intention that it should be retroactive, and we are unable to discover anything in the language used necessarily implying such an intention * * *." See, also, *Warren, Wallace & Co.* v. *Jones,* 9 S. C., 293. The foregoing language is peculiarly applicable to this case. In the first place, it cannot for a moment be contended that there are any express words in the statute manifesting an intention on the part of the legislature that it should have a retroactive operation; nor, in the second place, are there any words from which it must necessarily be implied that it was intended to give the act this effect. The Circuit Judge in his decree, which will be reported, discusses at length the subject of comity, but he assigns no reasons why the act should be construed to have a retroactive effect further than the fact that it manifests a change of policy on the part of the State. A change of policy was undoubtedly intended, but as there is nothing in the act demanding a construction different from that generally followed in the interpretation of statutes, its operation must be held to be prospective and not retroactive. But apart from this we do not regard it as an open question in

this State, as it was decided in *Tobin* v. *McNab,* 53 S. C., 73, that said act was not applicable to a case in which the mortgage was executed before the passage of the act.

It is the judgment of this Court, that the judgment of the Circuit Court be modified so as to conform to the views herein expressed.