PALMETTO LUMBER CO. v. SOUTHERN RY. *ET AL.*

(151 S. E., 279)

*Messrs. R. E. Whiting, Brown & Bush, J. Wesley Crum,* and *B. D. Carter,* for appellant,

*Messrs. S. G. Mayfield,* and *Harley & Blatt,* for respondents,

October 25, 1929.

The opinion of the Court was delivered by MR. ACTING JUSTICE C. T. GRAYDON.

This was an action by the plaintiff, Palmetto Lumber Company, against Southern Railway and Southern Railway—Carolina Division, defendants, on two separate causes of action for the destruction of certain premises by communicated fire.

The first cause of action alleges the communication of the fire from the locomotive of a train operated by the defendants to certain property of plaintiff, destroying same, and claims the right to recover under Section 4910, Vol. 3, Code of 1922. The second cause of action alleges that the defendants willfully, wantonly, recklessly, carelessly, and negligently managed and operated the engine causing the fire. The complaint prays for judgment against the defendants for the sum of $91.587.

From the undisputed facts in the case it appears that the Palmetto Lumber Company is a corporation duly organized under the laws of the State of South Carolina, and was engaged in the sawmill and planing business on certain property built on land leased from J. B. Guess, Jr., which property adjoined that of the Denmark Milling Company. A side track was built along the flour mill of the Denmark Milling Company, which track was used as an interchange track between the Southern Railway Company and the Seabord Air Line Railway Company. After the flour mill was constructed, the track in question was designated as an industrial track, but for some distance, approximately ten car lengths from the depot, it was still used as an interchange track.

The Palmetto Lumber Company on December 1, 1924, entered into a contract with the Southern Railway Company, agreeing, in consideration of the extension of said

side track, to exempt from liability the Southern Railway Company for fires which were communicated from the trains of said Southern Railway Company operated on said tracks to the property of the plaintiff herein. The cost of the construction of this extension track was paid by the Palmetto Lumber Company. A large percentage of logs is brought into the sawmill over this track, and also a majority of the lumber is shipped out over this track. There are two questions involved in the appeal, which will be taken up in order.

The first question is as to the construction of Section 4917 of the Code, with relation to Section 4910. This general Article is found under the large title of "Railroads," Chapter 52, Vol. 3, Code of Laws of 1922. This general Chapter contains 11 Articles, which are classified by the Code Commissioner and the various Sections grouped under the different Articles. Article 7 has the following title: "Regulations for the Preventions of Accidents and Concerning the Responsibility Thereof." Under this general Article there are various and sundry regulations with reference to the equipment of trains, formation of trains, signals to be given at crossings, warning boards at crossings, requiring trains to stop at stations, defining the responsibility of the railroad company for damages by fire, and many other such regulations which the General Assembly has placed upon railroad companies. In passing, it may be said that this Article does not contain solely regulations as to accidents and concerning the responsibility therefor, as set forth in the title, but under the Article are such titles as: "New Railroad—When and How Opened," "Railroad Company to Furnish Shelter for Certain Employees," and various other matters which are not at all concerned with accidents. Beginning at Section 4914 and through Section 4922, the entire reference is to the liability of railroads for injuries to employees, and these Sections all are part and parcel of the Act of 1916, General Assembly, Vol. 29, p. 970.

The contention of appellant is that, as Section 4910, fixing the responsibility of the railroads for damages by fire,

and Section 4917, are in the same Article, this codification of necessity prevents the railroad from limiting its liability as to fire damage under Section 4910, and therefore that the contract in question is void as a matter of law, being in conflict with provisions of Section 4917. A full reading of Section 4917 is necessary to a complete understanding of its terms and its scope.

"(4917) § 20. *No Exemption from Liability—Proviso.—* That any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Article, shall to that extent be void: *Provided,* That in any action brought against any such common carrier under or by virtue of any of the provisions of this Article, such common carrier may set-off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought."

It will be seen that the proviso in said Section refers solely and exclusively to amounts paid by insurance companies on relief benefits to the injured employee, or the person entitled thereto, on account of the injury or death for which said action was brought.

There is no question, that, under the authorities in this State and the Constitution, the Code Commissioner is given the authority to arrange the various Acts of the Legislature, and when the Code thus arranged is adopted by the Legislature it becomes the sole statute law of the State of South Carolina. This is so well settled by the decisions of our Court that it is useless to cite authority therefor. There is, however, another principle of statutory construction which is equally forceful, and that is that where the Section in question, construed with the other Sections of the Article in question, constitutes or creates an ambiguity, it is the province of this Court, under such state

of facts to go back to the original Act and trace its history, to ascertain the real meaning intended by the Legislature. Judge Mauldin, in ruling on this question, did not state that the Act was not ambiguous, but he simply said that under his construction a directed verdict was proper. To hold that Section 4917 refers to every part of Article 7 would be manifestly absurd, with the proviso which is thereto attached. It then becomes necessary to examine the history of this Section, to see when it was passed, under what circumstances, and what the real intention of the Legislature was in its passage.

A study of the original Act of 1916, designated as No. 557 and found at page 970, shows that Section 4 thereof, which is now Section 4917 of the Code, uses the word "Article," where the original Act uses the word "Act." The word "Act" is used in Section 5, Section 6, Section 7, and other parts thereof, and in each and every instance the Code Commissioner has changed the word "Act" to the word "Article." The Code Commissioner has further interchanged the Sections of the Act, and has placed this Act arbitrarily in the Article of the Code, Article 7 in the Chapter "Railroads." We find in other parts of this Article, notably Section 4941 and Section 4942, the word "Chapter" used, when manifestly the word "Article" or "Section" should have been used. If this Court should hold that this particular Section, as well as the other Sections of the Act of 1916, refer to every portion of Article 7 under the Chapter "Railroads," it would completely upset the legislative intention in every respect. The time limit on all actions under Article 7 would be decreased to two years. The general rule of construction that, where an amended or integral part of the Act is left out of the new Code, it is no longer of any binding force, is perfectly sound. This is clearly laid down under the Constitution and by the decisions of this Court, but to hold that, where an Act is enacted for certain purposes, and is placed in the Code by position so that it entirely changes the purposes and limitations of said

Act would be a strained rule of construction, which could not be countenanced by any Court of law.

This Court has held in the case of *Faust v. Bonnett*, 110 S. C., 435, 96 S. E., 489, that, where it appears from the reading of the old statute that the word "not" has been left out in the Code, this is purely a typographical error, and the word "not" was read into the Section by the Court, particularly where other parts of the Code show this to be the case. In this case, where the word "Act" was used in the original Act and changed to "Article," this Court would be warranted in making the same ruling hold that the word "Article" referred only to those Sections which were included in the Act of 1916.

The rule of construction of statutes is well laid down and discussed in the case of *Kaufman v. Carter*, 67 S. C., 312, 45 S. E., 211. There was an attempt to enforce the statutory penalty against general partnerships under that portion of the Code which referred to limited partnerships; and, although the word "limited" was not used throughout the entire Section, the Court held that general partnerships were not included, and examined the original statute to obtain the real meaning of the statute. Endlich on Interpretation of Statutes, § 86, lays down the rule that words should not be literally construed, without having regard for their setting, but that the setting, as well as the meaning, of the words should be considered in matters of construction.

In the case of *Ham v. McClaws*, 1 Bay, 93, this Court said that where the strict letter of the law is applied, and is against the dictates of common reason, it should not be interpreted so as to violate the dictates of common reason. The same rule is laid down in the case of *Blake v. Heyward*, Bailey, Eq., 211. Chief Justice McIver in *Carolina Sav. Bank v. Evans*, 28 S. C., 521, 6 S. E., 321, lays down the proper rule that, where the language of the statute is plain and admits but one construction, the Courts have no power to supply any real or supposed defects, but where the terms

of the statute are not plain, and admit of more than one construction, one of which leads to great inconvenience and injustice, and possibly to the defeat of the legislative intent, then the Court might adopt some construction in accordance with the legislative intent. Mr. Justice Hydrick, in the case of *State ex rel. Wolfe v. Sanders*, 118 S. C., 498, 110 S. E., 808, goes in detail into the question of the effect that the placing of an Act in different Chapters has upon the Act. His conclusion is that the origin of the Sections may be inquired into in reaching a proper conclusion as to their real meaning of the Sections. This construction is one of reason as well as one of right.

We therefore hold that Section 4917 does not refer to Section 4910 of the Code, but only to that part of Article 7 which includes the Employers' Liability Act (Civ. Code 1922, §§ 4914-4922). *Minis v. U. S.*, 15 Pet., 423, 10 L. Ed., 791; *Shealy v. S. A. L. Ry. Co.*, 131 S. C., 144, 126 S. E., 622; *Myer v. Western Car. Co.*, 102 U. S., 1, 26 L. Ed., 59; *U. S. v. Bowen*, 100 U. S., 508, 25 L. Ed., 631; *Vietor v. Arthur*, 104 U. S., 498, 26 L. Ed., 633.

The second cause of action alleged is based on negligence and willfulness, and appellant contends that, in case willfulness is shown, it is not within the protection of the statutory provision contained in 4917, nor within the contract entered into between the parties. The contract only agrees to indemnify and save harmless the railroad company from any and all damages resulting from negligence, and, of course, if it could be shown that the Act of the railroad company was willful it would not be in the protection of either the statutory provision or the contract. It is well settled that there is a distinction between a negligent Act and a willful Act, which creates entirely different rights and remedies under the law. The Circuit Judge directed a verdict generally, and this, of course, included both causes of action.

138

An examination of the record discloses merely an ordinary fire communicated by a railroad engine emitting sparks. There is no evidence that the railroad engine was equipped with insufficient spark arrester equipment. There is no evidence that the engine in question was defective in this particular and known to be defective by the defendants. If there was any evidence of willfulness the jury should have passed upon it, but under the testimony there was no evidence of willfulness and the directed verdict was proper.

The exceptions of the appellant are therefore overruled, and the judgment of this Court is that the judgment of the lower Court is hereby affirmed.

MESSRS. JUSTICES COTHRAN, BLEASE, STABLER and CARTER concur.

MR. CHIEF JUSTICE WATTS did not participate.