228 S.C. 77 (1955)
88 S.E.2d 874
ELEANOR PAULINE CRAWFORD (Also Crofford) SCHUMACHER, Appellant,
v.
JEANNETTE CRAWFORD (Also Crofford) CHAPIN, ADM'X, Respondent.
17057
Supreme Court of South Carolina.
August 23, 1955.
*78 Messrs. Blackwell Sullivan & Wilson, of Laurens, and John M. Schofield, of Walhalla, for Appellant.
Phil D. Huff, Esq., of Laurens, for Respondent.
*79 August 23, 1955.
JOSEPH R. MOSS, Acting Associate Justice.
This proceeding, which was instituted in the Probate Court of Laurens County, South Carolina, by the appellant Eleanor Pauline Crawford, involves the distribution of the estate of James Wister Crawford, who died intestate at Clinton, South Carolina, on November 2, 1952. It appears that Pearl Briggs Crawford, the wife of the deceased, was duly appointed Administratrix of his said estate and in the petition for such appointment it was alleged that she was the widow of the deceased and that she and her daughter Jeannette Crawford Chapin were the only heirs at law of James Wister Crawford. Pearl Briggs Crawford after her appointment as Administratrix of the estate died on March 25, 1953 and the respondent herein was substituted in her place.
The record reveals that James Wister Crawford and Pearl Briggs Crawford were ceremonially married on February *80 26, 1906 at Union, South Carolina. Thereafter they moved to Clinton, South Carolina where they resided as a married couple until the death of James Wister Crawford. The only child born of this marriage is Jeannette Crawford Chapin, the respondent herein.
The appellant, Eleanor Pauline Crawford, filed her petition in the Probate Court for Laurens County, South Carolina on November 5, 1953 alleging that her mother Pauline Grant Crawford had in good faith entered into a marriage contract with James Wister Crawford and that she was born of such marriage. She asserts by her petition that James Wister Crawford entered into two marriages, one with Pearl Briggs Crawford and the other with the appellant's mother, Pauline Grant Crawford. She also alleges that her mother died prior to the death of James Wister Crawford and that she being the daughter of the marriage that she should be declared a legitimate heir of James Wister Crawford and entitled to a one-third interest in his estate. She also asserts that she and the respondent are the legitimate daughters of the deceased James Wister Crawford.
The appellant bases her right to be declared a legitimate heir of James Wister Crawford and the right to inherit from him upon the provisions of Section 20-6.1 of the 1952 Code of Laws of South Carolina.
The respondent filed a return in the Probate Court for Laurens County, South Carolina, denying the material portions of the appellant's petition which alleges the marriage of James Wister Crawford and Pauline Grant Crawford and denying the appellant's right to inherit from the said deceased.
The matter was heard before the Probate Judge of Laurens County, South Carolina. The record shows that voluminous testimony was taken and the matter was fully argued by counsel for the parties. The Probate Judge of Laurens County, South Carolina filed his Decree adjudging that Pearl Briggs Crawford, the widow of James Wister *81 Crawford, and their daughter, Jeannette Crawford Chapin, were the sole heirs at law of the intestate. He dismissed the petition of the appellant. The Probate Judge held as a matter of law that Section 20-6.1 of the 1952 Code of Laws of South Carolina, as originally enacted into law or as contained in the 1952 Code of Laws of South Carolina was not in effect at the time of the death of the deceased, and was not retroactive. He also held that the provisions as contained in the Code of 1952 were not applicable because the said Code was not approved by the Governor of South Carolina until November 19, 1952, which was seventeen days after the death of James Wister Crawford. He did hold that the evidence showed that Pauline Grant Crawford, the mother of the appellant, acted in good faith in entering into her relationship with the deceased.
From the adverse ruling of the Probate Judge of Laurens County, South Carolina, the appellant appealed to the Court of Common Pleas of said County. The appeal was heard by Honorable J. Frank Eatmon, the Presiding Judge of said Court, and on October 25, 1954 he filed his Decree affirming the ruling of the Probate Court. The appeal to this Court is from the Decree of Judge Eatmon.
There can be no question but that there was a valid subsisting marriage between James Wister Crawford and Pearl Briggs Crawford and that the respondent is the only daughter of such marriage. The purported marriage of the appellant's mother and James Wister Crawford took place subsequent thereto. Under the findings of the Probate Court the relationship between Pauline Grant Crawford and James Wister Crawford was entered into in good faith. The appellant is the daughter of James Wister Crawford and Pauline Grant Crawford.
The Exceptions, four in number, raise two questions. The first being whether or not the respondent waived her right to question the effective date of the Act under which the appellant asserts her right to inherit by not raising such question in the pleadings. The other question for determination *82 is whether or not Act No. 109 as passed by the General Assembly of this State in 1951, Act April 13, 1951, 47 St. at Large, p. 150, applies to marriage contracts entered into prior to the effective date of the Act and when did the 1952 Code of Laws of South Carolina become effective.
The first question must be answered against the contention of the appellant. The appellant alleged her right to relief under the provisions of Section 20-6.1 of the 1952 Code of Laws of South Carolina and alleged the facts upon which she based this conclusion. The respondent filed a general denial. There can be no question but where the respondent denied the right of the appellant to recover under the quoted section of the statute that every issue of law that might arise from the construction of such statute was raised. It is true that the respondent did not specifically, in her return, raise the issue as to the effective date of the Act in question but this does not amount to a waiver of the right to raise such question.
In the case of Gantt v. Columbia Coca-Cola Bottling Co., 193 S.C. 51, 7 S.E. (2d) 641, 644, 127 A.L.R. 1185, our Supreme Court said:
"It is true that the statute was not pleaded in terms, but the Court is required to take notice of the statutes of the State, whether specifically mentioned or not, if the allegations of fact bring the case within the provisions thereof."
Again in the case of Peters v. Double Cola Bottling Co. of Columbia, 224 S.C. 437, 79 S.E. (2d) 710, 713, the Supreme Court said:
"It is not essential to plead the statute as such, but the Court is required to take notice of the statutes whether specifically mentioned or not if the allegations of fact bring the case within the provisions thereof."
Hence the respondent waived no rights by failure to plead her legal position with reference to the application of the Act in question to the factual situation as revealed by the pleadings and the evidence. It was the duty of the Court to *83 pass upon the application of such Act to the facts and the Court having done so there was no error.
Prior to 1951 Section 8568 (20-6.1 of the 1952 Code of Laws of South Carolina), 1942 Code of Laws of South Carolina provided:
"All marriages contracted while either of the parties has a former wife or husband living shall be void: provided, that this section shall not extend to a person whose husband or wife shall be absent for the space of seven years, the one not knowing the other to be living during that time; nor to any person who shall be divorced, or whose first marriage shall be declared void by the sentence of a competent court."
At the 1951 session of the General Assembly of South Carolina an Amendment to the foregoing section was adopted and approved by the Governor on April 13, 1951, Act No. 109, 1951 Statutes, page 150, which amended the said section by adding at the end thereof the following:
"`Provided, further, that when either of the contracting parties enters into the marriage contract in good faith and in ignorance of the incapacity of the other party, any children born of the marriage shall be deemed legitimate and have the same legal rights as a child born in lawful wedlock.'"
It is under this Amendment that the appellant asserts her claim to inheritance in the estate of the intestate. It should here be stated that the record shows that the appellant was born March 31, 1924 and that her mother, Pauline Grant Crawford, died December 17, 1931. It is obvious therefore that the asserted marriage of James Wister Crawford and Pauline Grant Crawford must have taken place prior to March 31, 1924. If the appellant is to prevail under the amendment, this court must give to it retrospective operation.
Quoting from the case of Johnson v. Baldwin, 214 S.C. 545, 53 S.E. (2d) 785, 788, this court has held:
*84 "The rule is well established in this State that a statute will not be construed so as to have a retrospective effect unless such a construction is required by the express words of the statute, or must necessarily be implied from the language used. Mutual Aid, Loan & Investment Co. v. Logan, 55 S.C. 295, 33 S.E. 372; Carolina Glass Co. v. State, 87 S.C. 270, 69 S.E. 391; Jefferson Standard Life Insurance Co. v. King, 165 S.C. 219, 163 S.E. 653; Home Building & Loan Association v. City of Spartanburg, 185 S.C. 313, 194 S.E. 139."
An examination of the above quoted amendment does not show that it was the intention of the General Assembly to make such provision retroactive in operation. There are no express words in the statute authorizing such nor any language used from which such operation can be implied. It should be noted that the verb "enters" used in the amendment is in the present tense and that the secondary verb "shall be deemed" is in the future tense and, therefore, construing the statute grammatically such applies prospectively only. Attention is here called to the provision of Section 30-203 of the 1952 Code of Laws of South Carolina which provides, inter alia:
"And all words importing the present tense shall apply to the future also."
There is no necessity for applying the last quoted section to the Act of the General Assembly, Act No. 109, 1951 Statutes, for the reason the Act under consideration used a verb in the present tense and also one in the future tense.
The appellant also asserts that the amendment above referred to, which is incorporated in the 1952 Code of Laws of South Carolina as Section 20-6.1, should be applied and pursuant thereto the appellant should be declared entitled to inherit as an heir at law of the intestate. The provision as is contained in the 1952 Code of Laws of South Carolina as Section 20-6.1 is as follows:
*85 "When either of the contracting parties to a marriage that is void under the provisions of § 20-6 entered into the marriage contract in good faith and in ignorance of the incapacity of the other party, any children born of the marriage shall be deemed legitimate and have the same legal rights as a child born in lawful wedlock."
The Act declaring the Compilation, Collection and Revision of the General Statute Law of the State as of January 8, 1952 was ratified by the General Assembly of this State on March 8, 1952 and provides: "This act shall take effect immediately upon its approval by the Governor." The Governor approved the Act on November 19, 1952, which was seventeen days after the death of James Wister Crawford, he having died on November 2, 1952.
The practical question to be answered is when was the effective date of the 1952 Code of Laws of South Carolina insofar as it applies in this case. The issue concerning the effective date of the 1952 Code, whether January 8, 1952, the date as of which, by the express language of the Act, was ratified March 8, 1952, its provisions are "declared to be the only general statutory law of the State" or November 19, 1952, the date on which the Governor approved the adopting act, is the important one.
The appellant urges that the Act itself provides for an effective date of January 8, 1952. If this Court adopts this construction it would have the effect of divesting the respondent of the vested interest which she took as an heir at law of her deceased father. This cannot be done. We do not decide that the provisions of the 1952 Code did not become effective on January 8, 1952 as provided for in the adopting Act. It is not necessary in this case to reach this conclusion. All that is decided here is that the Act could not become retroactive from November 19, 1952 to January 8, 1952 so as to destroy vested rights. Such a consideration is required by Article 1, Section 8 of the 1895 Constitution of this State.
*86 In the case of Muldrow v. Caldwell, 173 S.C. 243, 175 S.E. 501, 504, we find the following:
"`As the right of one person to inherit the property of another becomes vested on the death of the latter, the statutes in force at the time of his death, as against statutes in force at a prior or subsequent date, govern the disposition of the estate.' * * *
"`Rights of heirship vest immediately on the death of the intestate; and the heirs succeed to such right and title as the intestate had and no more. Accordingly the heirs at law and next of kin are to be determined as of the date of the death of the intestate.' * * *
"Supporting the legal principles declared in the quoted language are many decisions of our own court, and we cite, without comment, for no comment is necessary, a few of them: In re Malone's Estate, 21 S.C. 435; Corley v. Hoyt, 116 S.C. 110, 107 S.E. 34; Busby v. Busby, 142 S.C. 395, 140 S.E. 801; National Union Bank v. McNeal, 148 S.C. 30, 145 S.E. 549, and Whaley v. Jones, 152 S.C. 328, 149 S.E. 841."
And again:
"`Vested rights may be divested by forfeiture, but the legislature has no power to transfer property from one to another directly or indirectly.' * * *
"`During a person's lifetime his heirs, devisees, or legatees have no vested interest in his property which may not be destroyed by a statute or constitutional provision regulating the succession of property. Expectant heirs must look for their vested rights to the law in force at the time of the ancestor's death. Thus it has been held within the power of the legislature to provide that advancements previously made shall be considered a part of an intestate's estate for the purposes of distribution. Where, however, on a person's death, the rights of his heirs, devisees, or legatees have thereby become vested, these rights may not be impaired by subsequent legislation. But an act providing that *87 an administrator shall convey land in accordance with an agreement made by deceased before his death is not objectionable as disturbing vested rights; nor is a statute void which merely authorizes the executors to carry out a power of sale where the land had vested in the heir subject to such power.'* * *
"`On the death of the decedent, however, the rights of the heirs to the real property of their ancestor attach and become vested so that subsequent legislation cannot interfere with those rights.' 6 R.C.L. 314.
"The General Assembly may enact retrospective legislation, unless it has the effect of impairing the obligation of a contract, or divesting vested rights of property. McLure v. Gelton, 24 S.C. 559, 58 Am. Rep. 272; People's Loan & Exchange Bank v. Garlington, 54 S.C. 413, 32 S.E. 513, 71 Am. St. Rep. 800."
It also appears that the language of Section 20-6.1 as is contained in the 1952 Code of Laws is ambiguous when applied to the facts of this case. An examination of the Section shows that the ambiguity arises by reason of the use of the past tense "entered," and of the present tense "that is void", and of the future tense "shall be deemed legitimate," which affords some basis for doubt as to whether the section was intended to affect children born of a marriage that had taken place prior to the effective date of this section. Therefore, recourse must be had to the original enactment, Act No. 109, 1951 Statutes, for solution of the ambiguity.
In the case of Town of Forest Acres v. Seigler, 224 S.C. 166, 77 S.E. (2d) 900, 903, this Court said:
"Where the meaning of a provision in the Code is plain and unambiguous, it has been held that the Court cannot recur to the original statute for the purpose of ascertaining its meaning, Independence Insurance Co. v. Independent Life & Accident Insurance Co., 218 S.C. 22, 61 S.E. (2d) 399, but in case of doubt and ambiguity, resort may be had to *88 the act from which the provision was derived. Faust v. Bonnett, 110 S.C. 435, 96 S.E. 489; Palmetto Lumber Co. v. Southern Railway Co., 154 S.C. 129, 151 S.E. 279; 50 Am. Jur., Statutes, Section 446."
It has heretofore been determined that the original enactment could not be given retrospective effect. The conclusion therefore is inevitable that the appellant's claim to inheritance was properly denied. The Probate Court and the Circuit Court correctly decided this issue.
The additional sustaining grounds served by the respondent have not been considered for the reason that the exceptions of the appellant are without merit.
The judgment of the Court below is affirmed.
STUKES, TAYLOR, OXNER and LEGGE, JJ., concur.