CENTRAL TRUST CO. OF NEW YORK *v.* MARIETTA & N. G. RY. CO.,
(GROOME, Intervener.)

*(Circuit Court of Appeals, Fifth Circuit.    December 7, 1891.)*

1. FORECLOSURE OF RAILROAD MORTGAGE—LIEN ON AFTER-ACQUIRED PROPERTY—CONDITIONAL SALE—RIGHTS OF VENDOR.
     A railroad company issued bonds secured by a mortgage to a trust company covering "all after-acquired" as well as existing property of the railroad company, which was duly recorded.    Thereafter the railroad company purchased certain cars from a car-builder, under an agreement by which the car-builder retained title to the cars until they should be fully paid for, which agreement was in writing, but was never recorded.    In a suit by the trust company to foreclose its mortgage the car-builder intervened, claiming the cars under his reservation of title. *Held,* that the trust company was not a third party, within the meaning of Code Ga. § 1955a, (Laws 1881, p. 143,) providing that, in order to retain title to personal property sold and delivered, as against third parties, "title must be reserved in writing, and the paper duly executed and recorded as a mortgage on personalty," and that the trust company could derive no advantage from the car-builder's failure to record his reservation of title, as the act was intended only for the benefit of subsequent purchasers and creditors of the vendee.

2. SAME—CONSTRUCTION OF STATUTE.
     Nor, in such case, were the rights of the car-builder affected, as against the trust company, by Laws Ga. 1889, p. 188, validating conditional sales of rolling stock to

railroad companies with reservation of title, but requiring (section 3) that such reservation shall be in writing, and shall be recorded within six months after the execution thereof; as that act was also intended only for the benefit of third parties, and operated to repeal section 1955*a* no further than to provide a different method for the execution of contracts for the conditional sale of railroad equipments.

Appeal from the Circuit Court of the United States for the Northern District of Georgia.

Bill in equity by the Central Trust Company of New York against the Marietta & North Georgia Railway Company to foreclose a mortgage made by the railway company. Samuel W. Groome intervened, claiming title to certain cars in possession of the receiver appointed in the suit. Decree for intervener. Plaintiff appeals. Affirmed.

*H. B. Tompkins,* for appellant.

*Hoke Smith,* for appellee.

Before PARDEE, Circuit Judge, and LOCKE and BRUCE, District Judges.

PARDEE, J. Samuel W. Groome filed an intervention in the suit of *Central Trust Company of New York* vs. *Marietta & North Georgia Railway Company,* which was a suit for foreclosure of mortgage pending in the circuit court of the United States for the northern district of Georgia, claiming that he had made a conditional sale to the Marietta & North Georgia Railway Company of certain rolling stock; that the terms of the sale had not been complied with; that he was entitled to possession of the property, which was in the possession of the receiver in the main case; and asking an order for its restoration. The contract for the conditional sale of the property was in writing, but the writing was not recorded. The case was referred to a master, who made a report in favor of the intervener. The Central Trust Company has filed exceptions thereto, not necessary to here set forth. The court referred the case back to the master, with instructions to take additional evidence, and report any suggestions or recommendations as to what the court should order in reference to the purchase of said cars and trucks, and as to what price should be paid in view of the new evidence taken. After hearing additional evidence, the master filed a second report in favor of intervener, among other things as follows:

"The evidence shows that these cars were leased by Samuel W. Groome, the intervener, to the Marietta & North Georgia Railway Company on February 1, 1890, and notes were given by the company to Groome covering the value of the cars. On payment of these notes by the company the title to said cars was to vest absolutely in the railway company, without any further conveyance. In the opinion of the master, this contract, while called a 'lease,' was in fact a conditional sale; the principal condition being that the title was to remain in the vendor, Groome, until the cars were fully paid for. This contract is executed properly, but has never been recorded. It is contended by counsel for the Central Trust Company, the trustee of the bondholders, that, this contract of Samuel W. Groome never having been recorded, as provided by section 1955*a* of the Code of Georgia, he has no lien on said cars superior to that of the mortgage executed by the railway company to secure the payment of the bonds. The section of the Code referred to requires

that, 'in order to retain title' to personal property sold and delivered, title must be reserved in writing, and the paper duly executed and recorded as a mortgage on personalty.' The mortgage to secure the payment of the bonds was executed 1st January, 1887. The contract between Groome and the railway company was made in 1890, and the cars were delivered to the railway company in 1890. The general mortgage executed to secure the payment of the bonds covers not only all property owned by the railway at the date of its execution, but also all after-acquired property. In the opinion of the master, Samuel W. Groome, the intervener, under the facts of this case, has a lien on these cars superior to that of the general mortgage given to secure the payment of the bonds now being foreclosed by the Central Trust Company of New York. The railway company did not acquire title to said cars, and the general mortgage, covering all future acquired property of the railway company, attached only to such interests therein as the company acquired. The master thinks that the failure to record the contract retaining title in Groome until the cars were paid for does not deprive him of his lien except as to subsequent innocent purchasers and creditors of the Marietta & North Georgia Railway Company. In support of this opinion the master cites the decision of the supreme court of Georgia in the case of *Conder* v. *Holleman*, 71 Ga. 93, and the case of *U. S.* v. *Railroad Co.*, 12 Wall. 362, and the case of *Meyer* v. *Car Co.*, 102 U. S. 1. The facts in these last two cases are very similar to the facts in the *Groome Case*, and the master desires to call especial attention to the case cited from 12 Wall. \* \* \* The aggregate net value of all this rolling stock which came into the possession of the receiver on the 19th day of January, 1891, was $41,105. The evidence shows that these box-cars and coal-cars are necessary for the operation of the road by the receiver, and I therefore recommend that he be allowed to purchase the same for the aggregate net sum above stated, with seven per cent. interest from the 19th January, 1891. The evidence shows, however, that the receiver has no money with which to purchase said rolling stock, as the road is not earning its current expenses; and that, therefore, it will be necessary for the receiver to issue receiver's certificates to raise the money to purchase said rolling stock."

To this report the Central Trust Company filed four exceptions, all of which can be summed up in this:

"The master erred in finding that there was any conditional sale made by Groome to the Marietta & North Georgia Railway Company as against the Central Trust Company, trustee, because the act of sale was not executed and recorded according to the law of Georgia."

—And the 11 alleged errors, as assigned by the appellant for the purposes of appeal after the court below had affirmed the master's report, cover no more extensive ground; and counsel for appellant takes this view, for in his brief, after briefly reciting the facts, he says:

"The sole question is, then, did this equipment come into the use, custody, and control of the Marietta & North Georgia Railway Company charged with a contract of lease or a mortgage or a lien, so that it did not become subject to the after-acquired property clause in the mortgage now being foreclosed in this court?"

Further on:

"It is conceded that the authorities go to this extent: that, if the title to the equipment did not pass to the mortgagor, the Marietta & North Georgia Railway Company, or if it passed incumbered with a mortgage or lien or lease which could be enforced between the vendor (the intervener here) and the railway company, by retaking the property, rather than by demanding

full payment for it, then the property did not become subject to the lien of the mortgage being foreclosed under the after-acquired property clause. The question is whether, under the act of the Georgia legislature of 1889, (page 188,) any mortgage or retention of title or lease was executed in favor of the vendors upon the railway equipment under the facts in this case?"

The law of Georgia, which, it is claimed, controls this case, is as follows:

"An act to require the conditional sales of personal property to be evidenced in writing, and for other purposes.

"Section 1. Be it enacted by the general assembly of Georgia, that from and after the passage of this act, whenever personal property is sold and delivered, with the condition affixed to the sale that the title thereto is to remain in the vendor of such personal property until the purchase price thereof shall have been paid, every such conditional sale, in order for the reservation of title to be valid as against third parties, shall be evidenced in writing, and not otherwise; and the written contract of every such conditional sale shall be executed and attested in the same manner as is now provided by existing laws for the execution and attestation of mortgages on personal property: provided, nevertheless, that, as between the parties themselves, the contract as made by them shall be valid, and may be enforced, whether evidenced in writing or not.

"Sec. 2. Be it further enacted by the authority aforesaid, that the existing statutes and laws of this state in relation to the registration and record of mortgages on personal property shall apply to and affect all conditional sales of personal property as defined in the preceding section.

"Sec. 3. Be it further enacted by the authority aforesaid, that all laws and parts of laws in conflict with this act be, and the same are hereby, repealed.

"Approved September 27th, 1881."

Georgia Laws 1880–81, p. 143.

"An act to authorize contracts providing for the conditional sale of railroad equipment or rolling stock, or the leasing of the same, to be used in this state; to fix the time and place within and at which such contracts shall be recorded; to make valid such contracts heretofore made and recorded in the manner herein set forth; to authorize the record of such contracts heretofore made; and for other purposes.

"Section 1. The general assembly of the state of Georgia do hereby enact that it shall be lawful for any person or corporation to make a contract in writing with any railroad company or person owning and operating a railroad in this state to furnish said company or person with rolling stock or other equipment, deliverable either immediately or subsequently at stipulated periods, by the terms of which contract the purchase money for said property, in whole or in part, is to be paid thereafter, and in which contract it may be agreed that the title to the property so sold or contracted to be sold shall not pass to or vest in the vendee until the purchase money for the same shall have been fully paid, notwithstanding the delivery of such property to, and the possession of the same by, the vendee; but that, until said purchase money shall have been fully paid, the title to said property remain in said vendor and his or its assigns.

"Sec. 2. Be it further enacted, that it shall also be lawful for the manufacturer, owner, or assigns of any railroad equipment or rolling stock to make a written contract for the lease of such equipment or rolling stock to any railroad company or person owning or operating a railroad in this state; and in such contract it shall be lawful to stipulate for a conditional sale of said property to the said lessee on the termination of such lease, and to stipulate that

the rental received for said property may, as paid, or when fully paid, be applied and treated as purchase money, and that the title to such property shall not vest in such lessee or vendee until the amount of such purchase money shall have been paid in full to the lessor or vendor, or to his or its assigns, notwithstanding the delivery of such property to, and possession of the same by, such lessee or vendee; but that, until such purchase money shall have been fully paid, the title to such property shall remain in said lessor or vendor, or in his or its assigns.

"Sec. 3. Be it further enacted, that every such contract hereby authorized shall be good, valid, and effectual to retain the title to said property in said vendor or lessor, or in his or its assigns, as against the said vendee or lessee, and against all persons claiming thereunder: provided—*First*. That such contracts, if made within this state, shall be executed in the presence of, and attested by, or be proved before, a notary public, or justice of any court in this state, or a clerk of the superior court. If made without this state, it shall be executed in the presence of, and attested by, or proved before, a commissioner of deeds for the state of Georgia, or a consul or vice-consul of the United States, (the certificates of the foregoing officers, under their seals, being evidence of the fact,) or by a judge of a court of record in the state where executed. *Second*. That such contract shall be recorded within six months after the date of its execution, in the office of the clerk of the superior court of the county where is situated the principal office, in this state, of the said railroad company. *Third*. That each locomotive engine and each car so sold, or contracted to be sold, or leased, as aforesaid, shall have the name of the vendor or lessor plainly placed or marked on the same, or be otherwise so marked as to plainly indicate the ownership thereof.

"Sec. 4. Be it further enacted, that all such contracts heretofore made, executed, and recorded in the manner herein authorized and provided for shall be deemed as valid, and shall have the same effect as if the same had been made, executed, and recorded under the terms and by authority of this act.

"Sec. 5. Be it further enacted, that all such contracts heretofore made shall be valid, and be entitled to the provisions of this act, upon compliance with the terms thereof, and upon record of the same, as herein provided, within six months after the date of the passage of this act.

"Sec. 6. Be it further enacted, that all laws and parts of laws in conflict with this act be, and the same are hereby, repealed.

"Approved November 13, 1889."

Georgia Laws 1889, p. 188.

If the said law of 1889, as claimed by appellant, governs this case, and the contract of conditional sale between appellee and the Marietta & North Georgia Railway Company is invalid against the vendee and all persons claiming thereunder because of the failure to record the same as provided in said law, still we fail to see wherein the appellant will be benefited. Appellant's mortgage covers only after-acquired property of the railway company. For the mortgage to have effect, the property must first be acquired by the railway company. If the only title the railway company pretends to have is invalid, must not the title to the property in question still be in the appellee, who has never parted with it otherwise than is stipulated in the alleged invalid contract? As to third persons and subsequent creditors who have dealt with the railway company as the apparent owner of the property in its possession, there would be no difficulty in treating the property as belonging to the railway company on the doctrine of estoppel; but there can be no estoppel

as between the appellee and the Central Trust Company claiming the property as acquired by the railway company.

Whether or not the title passes in a conditional sale is most thoroughly considered in *Harkness* v. *Russell*, 118 U. S. 663, 7 Sup. Ct. Rep. 51, where Mr. Justice BRADLEY in an exhaustive opinion reviewing the whole subject on principle and authority, decided that a conditional sale does not as a matter of law and fact actually pass the title as between the parties. See, also, *Segrist* v. *Crabtree*, 131 U. S. 287, 9 Sup. Ct. Rep. 687; *Equipment Co.* v. *Bank*, 136 U. S. 268, 10 Sup. Ct. Rep. 999. It is very doubtful if a well-considered adjudged case can be found holding in a contract of conditional sale, which expressly reserved title in the vendor, that the title actually passed by reason of subsequent failure to record or register the contract in accordance with local law. But it is not necessary to pursue this line of inquiry. The law invoked is a registry law. It can have no other purpose than to give notice to the parties dealing with the vendee or lessee. In *Conder* v. *Holleman*, 71 Ga. 93, a case very like the present, the supreme court of Georgia says:

"It is insisted by counsel for plaintiff in error that under the act of 1881, (Code, § 1955a,) this being a conditional sale from the claimant to the defendant in execution, whereby the title to the property levied on was reserved to claimant, and inasmuch as the same was not recorded within thirty days, that it was subject to the judgment lien of plaintiff, although such judgment had been obtained long prior to the sale by claimant to the defendant in execution. One provision in the statute referred to is, 'the existing statutes and laws of this state in relation to the registration and record of mortgages on personal property shall apply to and affect all conditional sales of personal property as defined in this section.' Hence it becomes necessary that the conditional sale in this case should be recorded within thirty days, the same as the record of mortgages on personal property. But the object of the registration of mortgages is to give notice to all persons having dealings with the mortgagor of the existence of the mortgage; and in this case it appears that the dealings had between the plaintiff in execution and the defendant had taken place long before the sale of the property levied on, which was sold by the claimant to the defendant in execution; and the judgment in said case had been obtained long before said conditional sale. Then, whether said conditional sale had been duly recorded or not, it would not in any manner affect the plaintiff, whose judgment had been obtained before the sale, and as to him it made no difference whether the sale was recorded or not. A judgment creditor of a mortgagor, whose judgment was obtained before the making of a mortgage, would not be affected by the record of such mortgage in any way. So this judgment creditor is in no wise affected by the non-record of this conditional sale. No right has accrued to him between the making of the conditional sale and the record of the same. He is not hurt by its non-record, and as to him it is the same as if the sale had been duly recorded. The title to this property was in the claimant, he having reserved the same until it was paid for by the defendant in execution; and he did not lose the same, nor render it liable or subject to the judgment and execution of plaintiff, by reason of not having his conditional sale recorded within thirty days. The lien of this judgment never attached to the property levied on. Such being the judgment of the court below, the same is affirmed."

It is to be noticed that the Code of Georgia under which the above decision was rendered (and hereinbefore given) declares all conditional

sales not recorded according to its requirements void as to third parties, and the court held that third parties with prior judgments were not benefited by the failure to register according to law. In *U. S.* v. *Railroad Co.*, 12 Wall. 362, the supreme court of the United States, in considering the effect of a railroad mortgage covering after-acquired property, and the effect of registry laws, says:

"The appellants contend, in the next place, that the decision upon the facts was erroneous; that the mortgages, being prior in date to the bond given for the purchase money of these locomotives and cars, and being expressly made to include after-acquired property, attached to the property as soon as it was purchased, and displaced any junior lien. This, we apprehend, is an erroneous view of the doctrine by which after-acquired property is made to serve the uses of a mortgage. That doctrine is intended to subserve the purposes of justice, and not injustice. Such an application of it as is sought by the appellants would often result in gross injustice. A mortgage intended to cover after-acquired property can only attach itself to such property in the condition in which it comes into the mortgagor's hands. If that property is already subject to mortgages or other liens the general mortgage does not displace them, though they may be junior to it in point of time. It only attaches to such interest as the mortgagor acquires; and if he purchase property, and give a mortgage for the purchase money, the deed which he receives and the mortgage which he gives are regarded as one transaction, and no general lien impending over him, whether in the shape of a general mortgage or judgment or recognizance, can displace such mortgage for purchase money. And in such cases a failure to register the mortgage for purchase money makes no difference. It does not come within the reason of the registry laws. These laws are intended for the protection of subsequent, not prior, purchasers and creditors."

See, also, as to the effect of the after-acquired property clause, *Fosdick* v. *Schall*, 99 U. S. 235; *Meyer* v. *Car Co.*, 102 U. S. 1.

A careful examination of the said act of 1889 leads to the conclusion that it was not intended to invalidate any contract that under the general law was valid; that it was rather intended to facilitate the making of conditional sales and leases of railroad equipments to be used on the railroads in the state. In terms it declares nothing invalid, and it is only by implication that contracts for a conditional sale of railroad equipment are invalidated for not complying with the act as to registry. The law of 1881, as found in the Code, is not repealed, except by implication, which is not favored, (*McCool* v. *Smith*, 1 Black, 470;) and that only as to one kind of personal property, the many being left to the operation of the prior law. It seems clear that the act of 1889 is a registry law intended for the benefit of third parties; that it does not repeal the law as contained in the Code further than to provide a different method of executing contracts for the conditional sale or lease of railroad equipment where the vendor or lessor retains title, and the recording and otherwise giving notice to the public of the character of the railroad's ownership; that a mortgagee in a prior mortgage, although his mortgage covers after-acquired property, is not a third person, within the meaning of the registry laws of Georgia; and that a failure to record a conditional sale of railroad equipment according to the Georgia act of 1889

does not invalidate the contract as between the parties or in favor of a prior mortgagee. The decision appealed from should be affirmed, and it is so ordered.