Price, C. J.
This action is here on appeal, and the controversy is between R. J. Ginsburg and Sons on the one side, and the defendants, The Ohio Southern Railroad Company and the Central Trust Company of New York, upon the other side.
The firm of R. L Ginsburg and Sons and the Central Trust Company, are cross-petitioners in this action, each contesting for priority of lien on a certain portion of the property of the Railroad Company.
The cross-petition of R. L. Ginsburg and Sons sets up a mechanic’s or material-man’s lien on that portion of the said railroad known as “The Jeffersonville extension” made in Fayette, Green and Clinton counties, upon which they claim a balance of $3200 00, and interest thereon from May 30th, 1895. This lien was filed for the sum of $6,400.00, upon which the Railroad Company paid in April or May, 1895, the sum of $3,200.00,
For the purpose of obtaining a lien on the railroad property, R. L. Ginsburg and Sons, prepared and filed with the recorders of Fajette, Green and Clinton counties, a statement of their account for steel rails by them sold and delivered to the defendant Railroad Company, with affidavits required by statute attached, which filing was had on the 29th of May, 1895.
The answer of the Railroad Company to this claim, admits certain averments of the petition of Martha Rousculp, plaintiff, adopted by R. L. Ginsburg and Sons in their cross-petition, but to the extent only of the admissions made in its original answer to the petition, and denies all the other averments of her petition.
It admits that it is indebted to R. L, Ginsburg and Sons in the sum of $6,400 00 as alleged; and that said indebtedness is on account of material furnished by said R. L. Ginsburg and Sons at the request of the Railroad Company, *438 which material was used in the construction and operation of its railroad; and the answer further admits that said R. L. Ginsburg and Sons filed a lien upon its said railroad as in their crossp-etition set out, and that notice thereof was served on the chief officer of the Railroad Company. The other allegations in said cross-petition are denied.
It appears from other pleadings in the case and the record before us, that on the 23rd day of May, 1881, The Ohio Southern Railroad Company executed and delivered to the Central Trust Company of New York a trust deed to secure a bonded indebtedness of four millions of dollars, which was duly filed in the counties along the original line of the railroad, and no part of the principal of the bonds was paid prior to the sale of the railroad property under the order of the lower court, and much interest due since the appointment of a receiver, has not been paid.
On the first day of October, 1889, the Railroad Company executed and delivered to the same Trust Company its second mortgage to secure a bonded indebtedness of $2,800,000.00, and none of the bonds secured by this mortgage were paid prior to the sale of the railroad property. This mortgage was duly recorded shortly thereafter. This mortgage, as did the first, described all the “property, rights of way, buildings, sidings, shops, locomotives, cars etc., belonging to the Railroad Company now held by it, and all such property of a similar character which might thereafter be acquired at any time by it for the use of said described railroad, or in connection therewith.” By the further , wording of the instrument it embraced, “all rails, ties, machinery, tools, and supplies and materials whatsoever for or in respect of the constructing, locating, operating, maintaining, repairing or replacing said described railroad, or convenient ’ or necessary for use for the purposes thereof, now held or acquired by said railroad in connection therewith. ”
There may be other language in the mortgage or trust deed by which a lien is claimed on all subsequently acquired property of the kind already described, and any extensions or additions to the original line covered by the mortgage. The bonds secured by these two trust deeds were sold and negotiated shortly after they were executed and recorded.
*439 Since the execution of these two trust deeds two or more extensions have been made. One from Springfield in Clark county, Ohio, to Lima, in Allen county, Ohio. And another, called in this case the “Jeffersonville extension”,in the counties of Fayette, Green and Clinton. This extension is said to be 24-| miles in extent. This latter extension is the bone of contention between the Central Trust Company and R. L, Ginsburg and Sons, and the lien of the latter is denied by the Trust Company, and it is urged that if said firm has a lien, it is inferior to the mortgages of the Trust Company,
The property of the Railroad Company has been sold since this action was commenced • and since the pleadings making this controversy have been filed, and we learn there are funds in the lower court arising from the sale of all this property, to which the liens of these parties attach or have been transferred by reason of the sale. Then the question is: At the time of the sale, did R L. Ginsburg and Sons have a valid lien on that part of the road known as the “Jeffersonville extension;” and if so, is it superior to the liens of the Central Trust Company? We have heard the case upon the evidence and facts upon which the question was litigated before the referee, supplemented by some testimony of the receiver as to the earnings of the road, and the payment of interest on the bonds represented by the Central Trust Company.
Regarding the lien of R. L. Ginsburg and Sons, there was an agreement made between the parties before the referee as follows:
“R. L. Ginsburg and Sons is a partnership with an office located at Detroit, Michigan, one at Buffalo, New York, and that said firm, at the request of The Ohio Southern Railroad Company, on or about April 23rd and 29th, 1895, shipped to said Railroad Company from Buffalo, New York, four hundreed tons of steel rails, of the value, on board the cars at Buffalo, of $16.00 per ton, all of a total value of $6,400.00. The said rails were received by said Railroad Company and used in the construction and extension of its said line into Fayette, Green'and Clinton counties, Ohio, during the month of May, 1895.
“That one-half of said indebtedness ($3,200.00) has been *440 paid to said R, L, Ginsburg and Sons, and that there is still due and owing said firm thirty-two hundred ($3,200.00) dollars with interest from April 30th, 1895,
“That said R. L. Ginsburg and Sons filed with the recorders of Fayett,"Green and Clinton counties, Ohio,statements of said account, duly verified by affidavits, certified copies of which are hereto attached and made part hereof.
“That said firm, after so filing the said affidavits, on • April 30th, 1895, served upon the President of said Railroad Company, a.notice in due form according to law, that said affidavits had been filed in said counties, where the said materials were so furnished as aforesaid, and that there was then due said firm the sum of $6,400.00 thereon.’’
The Trust Company put in evidence in this court the fhct that for these steel rails, the Railroad Company executed to R. L. Ginsburg and Sons two promissory notes,dated April 20th, 1895, each for $3,200.00, payable in three and four months respectively, and that the first note was endorsed by Geo. W. Saul, who was then President of the Railroad Company,and also by one M. W. Barse. This is true as to the first note, but not of the second. It has no other name liable thereon.
It has been claimed, that the giving of the notes for the claim stated in the lien, waived the lien; and, further that notes having been given and the statement for the lien not containing a description of the notes, the lien is invalid.
If the notes were given and received in payment of the rails, the point would be well taken.
This is decided in 7 Ohio C. C. Reports, p. 376, in the ease of Bernsdorf v. Hardway; also in the case of Crooks v. Finney, 39 Ohio St., 57.
But it is not shown or admitted that the notes were given or received in payment of the debt, and we have no evidence on the subject. As a general rule, giving a note for a debt is not its payment, but merely evidence of the debt, and we must so regard these notes in this case.
Again, what is the effect on the lien of taking the first note bearing the endorsements of Saul and Barse? If they are to be treated as original: makers and sureties for the Railroad Company, by reason of which the lien is waived as to that part of it, then we have the undisputed proof, *441 that that note has long since been paid,and is no part of the claim now sought to be enforced, The lien might be bad as to the first note and good as to the second
The other challenge of the lien is based on the fact, that the claim filed for a lien did not and' does not describe either of these notes, and therefore sections 3185, 3187 and 3203 of the Revised Statutes have not been complied with.
Neither of these sections relate to the right and method of obtaining a lien upon railroad property. They provide for liens upon buildings and other structures, for machinery, materials etc., and for work and materials furnished in oil wells and on roads and ditches &c.
And they provide for a description in the affidavit of every promissbry note given for the debt and that such note shall take effect as a lien from the date of first item therein. Hence the importance of describing notes if they represent materials furnished at different dates. But if such dates are not material, or if the party does not rely upon the notes, but upon obtaining a lien for his security, such lien would not fail for want of a description of a promissory note. He has waived his lien for the note, but not the lien or the actual debt.
But if this statement is not entirely free'from doubt, we add, that section 3208, providing for liens upon railroads, does not require s description of any promissory note which may have been accepted. That section reads' in part:
“A person who performs labor or furnishes materials for or in construction of any railroad, depot buildings, water-tanks, or any part thereof, . * * * in addition to his rights under the preceding section, shall have a lien for the payment of the same upon such railroad, and such lien shall have and maintain precedence over any lien taken, or to be taken, and shall subsist for one year from the date of filing the attested account hereafter provided for; and if an action is brought to enforce the lien within that time, it shall continue in force until finally adjudicated. In order to perfect such lien, a person performing labor, or furnishing materials, or boarding, as herein specified, shall, within forty' days from the date that such person ceased performing labor,, or furnishing materials, or boarding, on or for the railroad, file with the recorder of *442 the county where the labor was performed, or materials, or boarding furnished, an affidavit containing an itemized statement of the kind and amount of materials furnished, or labor performed, the time when, the contractor or subcontractor for whom, and the section and place where, on the line of the road the labor was performed, or materials furnished, and the amount due therefor, after crediting all payments and setoffs; '* *
Therefore we hold that the lien is not defective for the reasons mentioned, 'To perfect the lien in each county, Ginsburg and Sons filed a statement of their account for the rails furnished, with a proper affidavit attached, in Fayette county on May 29th, 1895, and in Green and Clinton counties on the same or the next day; and legal notice thereof was given as required by statute, The statement of. factB agreed upon and above quoted shows all legal steps were taken to obtain their lien,
One of the agreed facts is that the rails sold were used by the railroad company in the construction of the road in those counties during the month of May, 1895; and the claim is not for construction work, but for materials purchased by the Railroad Company,
It is important to know, as nearly as we may, the date the property known as “The Jeffersonville extension” was obtained by the Railroad Company. We have been furnished with no very accurate date upon this subject.
From a letter of Mr. Fisher, an officer of the Railroad Company, and which is put in evidence by agreement,shows that some right of way was obtained in the latter part of the year 1893, and the deeds obtained in most cases from January, 1894, at different dates, down to the date of this letter, April 11th, 1899; but these deeds, we infer, were executed in pursuance of right-of-way contracts in those three counties in the latter part of 1893, and the early part of the year 1894.
It becomes important to know also when the mortgages of the Trust Company were filed in the three counties. A letter from the recorder of Green county, placed in evidence by agreement, shows that the mortgage or trust deed to the Central Trust Company, executed the 23rd of May, 1881, was filed in that county June 22nd, 1894. We find no *443 thing in the evidence submitted to us, when this was filed in Fayette and Clinton counties, but we will assume it was near the same date,
From the original pleadings in the case and facts in the record, we find that the trust deed executed October 1, 1889, was filed for record in those three counties in June 1894, and before the rails were furnished.
The contest now comes, between the clause in the trust deed or mortgage, which extends its provisions to cover all subsequently acquired property, and the lien of Ginsburg and Sons filed May 29th, 1895.
The rails were furnished in April, 1895, and used by the Railroad Company in May of that year.
The “after or subsequently acquired” clause of the mortgages or trust deeds is not before us in its literal language, but we will assume that it clearly provides, that the lien of the mortgages Bhould incumber any railroad property which that company should subsequently acquire and own.
This clause is certainly good as between the parties to the instrument, and the lien would attach to such after acquired property as soon as it became the property of the Railroad Company, and it could not attach before that time. But does this mortgage lien, when it does take effect, absolutely command the situation, independent of the rights and equities in favor of the material man who has obtained a lien under section 3208, already quoted ?
We are cited some authorities for the Trust Company which are said to be decisive of the question.
Among these cases is Feike v. The C. & E. Ry. Co., 12 C. C. R. of Ohio, p , 362. There was a contest between holders of mechanics lien, and the holders of mortgages on the property which had been a lien on all the property for many years, before the labor was done and material furnished for which the liens were taken; and the case shows that the bonds secured by the mortgages had been issued and negotiated long before the liens of the labor and material man attached. The court would not displace the priority of such bonds in favor of the mechanics liens.
But we think it may be differently held where, as in this case, so far as we are informed, the bonds had all been issued and negotiated on the faith and credit of the railroad *444 property then in existence and then owned by the company, and not on the fajth and credit of property that had no existence until several years after the bonds and mortgages had been made and issued and negotiated, We will refer to this distinction more fully hereafter.
We are also cited the case of T. D. & B. R. R. Co., v. Hamilton, 184 U. S., 296 301. (Rep. System, p. 546.)
The lien asserted there, was for the building of a dock for the railroad company on the Maumee river. It was attempted to get a preference over pre-existing mortgages, by a mechanic’s lien, and also on the ground that the money expended was in the nature of operating expenses and that equity should recognize such preference. Both views were rejected by the court. But the construction of a clause for after acquired property was not called for in that case; and’ the court say in the opinion, that “there was no statute in force at the time the mortgage was executed, giving any priority to subsequent mechanics’ liens.” But here, we find that after the mortgages had been executed and bonds negotiated upon the then existing and described property of the Railroad Company; that is, after the first mortgage of May 23rd, 1881, but before the date of the second, executed October 1st, 1889, the statute was amended or extended in its provisions, in section 3208 of the Revised Statutes', passed April 6th, 1883, which does give a preference to such liens, and this was in full force and effect many years before “The Jeffersonville extension” in Fayette, Green and Clinton counties became a property of the Railroad' Company.
We are also cited the case of International Trust Company, v. I. B. Townsend Brick and Contracting Company, 95 Federal Reporter, 850,
In that case, the defendant Brick and Contracting Co. had furnished stone for abutments and approaches, and erected the same for a draw bridge as part of the Cleveland, Canton and Southern Railroad in the city of Cleveland, which was to be paid for on monthly estimates. The railroad company went into the hands of a receiver before any payment bad been made, or before the larger part had been paid. The Brick and Contracting Company filed its verified account to obtain a lien, and set that up for preference before the pre-existing mortgages. And it did more. It *445 claimed that this work and the materials should have been paid out of proceeds of sale in preference to the mortgages, because it was an expense in operating the road and which was essential to the operation of the road; and further, that as the mortgagees had been paid interest out of the net income of the road, they should be ordered to restore to that extent, and the proceeds of sale could be used in enforcing such restoration.
An examination of the case will show that the lower court had found, that the mechanic’s lien had not been perfected according'to law, because it was not filed in forty days and notice of same was not served on the company in ten days after the filing; and thus the mechanic’s lien dropped out of the further consideration of the case, and in the circuit court of appeals, we find noticed only this disposition made of the lien in the lower court.
That being out of the case, the court of appeals found, as the supreme court did in the Railway Company v. Hamilton, supra.
Hence we do not regard either of these cases as decisive of the question we have before us.
There is a case cited by Judge Harmon for the Trust Company, which is much nearer this controversy.
The case is Harris v. Youngstown Bridge Company, et al, found in 90 Federal Reporter, p 822, and was decided by the circuit court of appeals of the sixth circuit. We read the first syllabus:
“An after-acquired property clause in a mortgage given by a corporation attaches to property to which the mortgagor subsequently acquires either the legal or equitable title, but subject to the limitation that the mortgagee is not a purchaser for value as to such property, and can take by way of lien no greater interest than that acquired by the mortgagor itself, and his lien is subject to all known liens or equities, valid against the mortgagor, which arise in.the act of purchase or acquisition, and which qualify the scope and extent of its ownership.’’
We read from the opinion of Judge Taft on pages 328 329:
“It is well settled since the decision of the supreme court of the United States in Pennock v. Coe, 23 How. 117, that one may execute a mortgage, valid at least in equity, upon *446 property not in existence or not owned by him, the lien of which will immediately attach to the property when it shall come into existence, or become the property of the mortgagor; and this whether the title of the mortgagor is legal or equitable. The rule has been applied both to real and tfl personal property. Dunham v, Railway Co., 1 Wall., 254, 266; Railroad Co. v. Cowdrey, 11 Wall. 459, 481; U. S. v. New Orleans R. R., 12 Wall. 362; Dillon v. Barnard, 21 Wall. 430, 440; Fosdick v. Schall, 99 U. S. 235, 251; Myer v. Car Co,, 102 U. S., 1; Porter v. Steel Co,, 122 U. S., 267, 283, 7 Sup. Ct. 1206; Thompson v. Railroad Co., 132 U. S., 68, 74, 10 Sup. Ct., 29; Railroad Co. v. Hamilton, 134 U. S., 296, 10 Sup. Ct., 357; McGourkey v. Railway Co., 146 U. S., 536, 567, 13 Sup. Ct., 170; Wade v. Railroad Co., 149 U. S., 327, 341, 13 Sup. Ct., 892; Irrigation Co. v. Garland, 164 U. S. 1, 17 Sup. Ct., 7. The limitations of the rule are clearly drawn in the foregoing cases. The chief is that the mortgagee of after-acquired property is not a purchaser for value, and cannot acquire an interest by way of lien greater than that wliich the mortgagor has himself acquired. The lien of the mortgage attaches to after-acquired property in the condition in which the mortgagor takes it from his vendor, and subject to all known liens and equities valid against the vendor, and also subject to all liens or equities valid against the vendee and mortgagor which arise in the act of purchase or acquisition, and therefore necessarily qualify its scope and extent. Thus, a vendor’s lien on the property, good against the mortgagor, is prior in right to that of the mortgagee under an after acquired property clause. So, too, a purchase money mortgage upon after-acquired property is not displaced by the lien of a prior mortgage of the mortgagor containing an after-acquired property clause, because in equity the purchaser is regarded as taking only the difference between the value of the property and the amount still due on the price. U. S. v. New Orleans R. R., 12 Wall. 362, In cases of conditional sales to the mortgagor, the mortgagee, under the after-acquired property clause, obtains a lien subject to the same defeasance or forfeiture as that to which the title of his mortgagor is subject, Fosdick v. Schall, 99 U. S., 235, 251; Myer v. Car Co., 102 U. S., 1; Truts Co. v. Gromane, 2 U. S., App. 95, 105, *447 1 C. C. A. 133, 48 Fed. 868; Loomis v. Railroad Co., 17 Fed. 301, 305. And it is even held that if the property comes into the hands of the mortgagor subject to a lien which is good against him, though, for want of formalities, it is not good against his subsequently attaching creditors and third persons, it is nevertheless prior to the lien of a mortgagee Under an after-acquired property clause. And so, where the legal or equitable title of the mortgagor ripens and is acquired only through the outlay or expenditure of another, under such circumstances that, as between the other and the mortgagor, the former has a lien in equity upon the interest of the latter, the prior mortgage with an after-acquired property clause attaches only to the interest of the mortgagor subject to the same lien. Irrigation Co. v. Garland, 164 U. S. 1, 17 Sup. Ct. 7; Botsford v. Railroad Co., 41 Conn. 454. Where, therefore at the instance of the mortgagor, a third person pays the purchase money for additions, and takes title to them himself, or directs their conveyance directly to the mortgagor, with an express agreement that he shall have a lien for the purchase money, such lien is prior to that of the mortgagor, because it is only through his expenditure that the purchase is effected and the addition acquired. This is not a fraud upon the mortgagee, or a violation of any right of his, in any case where the mortgagor is under.no affirmative obligation to the mortgagee to acquire additions to the property, or to acquire them free of lien. ”
The principles of the latter case, as well as equitable considerations, justify us in saying, that as against the after-acquired property clause, the party who contributes to the body of the property to which the mortgage is to attach, had, as vendor, and creditor, a superior equity in the property as against the mortgagor; and not only so, but the mechanic’s lien would be good, perfectly good against it, the railroad company. And if so, the mortgagee takes under such clause, the property subject to such equities and such liens.
Again; we do not believe that section 3208, under which the lien of Ginsburg and Sons was taken, violates any contract obligation- held by the Trust Company by virtue of these mortgages; and especially is this true as to the clause respecting after-acquired property.
*448 We perceive no good reason which forbids the legislature from enacting section 8208, Revised Statutes, and thereby give in this case to the material man for his rails used by the mortgagor, a preference over the mortgagee. This law is not retroactive as to this clause of the mortgage, because it was enacted in 1883, ten years or more before the lien of the mortgage could attach to the “Jeffersonville extension,” the subsequently acquired property.
As said by Judge Taft in Harris v. Bridge Company, last cited, “the mortgagee of after-acquired property is not a purchaser for value, and cannot acquire an interest by way of lien greater than that which the mortgagor has himself acquired. ”
The clause covering after-acquired property has no better standing than would a new mortgage on the acquired property of the date when it was acquired, say in this case in 1893, ten years after section 3208 of Revised Statutes was enacted, giving a mechanic’s lien a preference. The new mortgage should be construed with reference to such existing statute, and the statute regarded as part of the mortgages.
So, in this case, we hold the lien of Ginsburg and Sons good, and also the statute good which gives" them a preference over the Trust Company in the property in the three counties where the rails were used and the liens filed — -The Jeffersonville extension.
The property of the Railroad Company having been sold and the proceeds of the sale being in the custody of the clerk, we order the amount due Ginsburg and Sons first paid therefrom in ■ — •— days, and remand the case to the lower court for execution under the general decree there made.
The costs of this litigation are taxed to The Central Trust Company.
The question of net earnings used by the receiver in payment of interest on the mortgage debt, was argued and cases cited bearing upon the right of Ginsburg and Sons to demand restoration. It seems that over $200,000, were so paid; but we do not have such clear state of facts and the necessary parties before us, to dispose of the case on that *449 question, and we do not find it necessary to give it further consideration here,
Doyle & Lewis, for Central Trust Company.
Gable & Parmenter, for R. L. Ginsburg & Sons.