### In re ATLANTA NEWS PUB. CO.

#### Intervention of GOSS PRINTING PRESS CO.

#### (District Court, N. D. Georgia. October 18, 1907.)

#### No. 1,846.

1. SALES—CONDITIONAL SALES—VALIDITY—STATUTES.

Code Ga. 1895, § 2776, provides that whenever personal property is sold on condition that the title shall remain in the vendor until paid for, such sale in order to be valid as against third parties shall be in writing and executed in the same manner as mortgages of personal property, but as between the parties the contract as made shall be valid whether written or not, and section 2777 declares that conditional bills of sale must be recorded within 30 days from date, and in other respects shall be governed by the laws relating to the registration of mortgages. *Held*, that, where there is a mere oral reservation of title and no writing, the title will be so fixed in the buyer that the rights of third persons obtaining judgments or liens antedating the sale may be enforced against the vendor's claim of title, but if the reservation of title is in writing, though not properly executed and recorded, the reservation is good as between the parties and as against general creditors and creditors with liens antedating the sale, and is only subject to such liens as are obtained or debts arising from credit given in good faith by reason of the buyer's apparent ownership of the property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 1366–1371.]

2. SAME—RESERVATION OF TITLE—VALIDITY—CONTRACT—CONSTRUCTION.

A bankrupt, having purchased a three-deck newspaper press under a written contract providing that the title should remain in the seller until the price was paid, subsequently telegraphed the seller's representative ordering a fourth deck for the press, "according to the original agreement," and on the same day wrote a letter confirming the telegram, containing the words "Your company retaining title to the fourth deck until the notes are paid." *Held*, that a sale of the fourth deck pur-

suant to such correspondence constituted a written contract of conditional sale, which though not executed or recorded as prescribed by Code Ga. 1895, §§ 2776, 2777, was valid as against the bankrupt, its general creditors, and those not having given credit to the bankrupt on the faith of the ownership of the property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 1353.]

**3. BANKRUPTCY—DIVISION OF MACHINES—CONDITIONAL SALES—LIENS.**

Where a printing press was subject to a mortgage on the plant of the bankrupt at the time the bankrupt purchased a fourth deck therefor under a valid conditional sale, the seller was entitled to recover such fourth deck from the bankrupt's trustee, the bankrupt having failed to pay the price before bankruptcy, provided such fourth deck was such a separate and distinct part of the press that it could be taken off and leave the remainder intact.

**4. SAME—CONTRIBUTION TO SUBSEQUENT LIENS—PAYMENT.**

Where intervener sold a bankrupt a fourth deck to a printing press under a conditional sale, and on nonpayment of the price before bankruptcy claimed the right to recover the proceeds of a sale of such fourth deck from the bankrupt's trustee, it could only do so after paying such proportion of the liens that attached to the property of the bankrupt after the fourth deck became part of the plant and before bankruptcy, as the amount realized from the sale of such fourth deck bore to the amount realized from the bankrupt's entire plant, and this though such liens had been paid off, the court of bankruptcy having jurisdiction to recharge such liens against the property to which they belonged, regardless of their prior payment.

John L. Hopkins & Sons, for petitioning creditors, receiver, and trustee.

A. H. Bancker, for bankrupt.

Westmoreland Bros., for intervener, Goss Printing Press Co.

NEWMAN, District Judge. On the 10th day of May, 1902, the bankrupt, the Atlanta News Publishing Company, purchased from the intervener, the Goss Printing Press Company, a newspaper printing and folding machine of the style known as a "Goss three-deck straight-line, with one color attachment machine." In this contract which was in writing signed by both parties, it was stipulated:

"It is further agreed that the title to all of the aforesaid property shall remain in the party of the first part [the Goss Company] until accepted and paid for by the party of the second part [the Atlanta News Company] in full as agreed upon hereafter."

The purchase price for which this machine was sold was $16,000, of which $5,000 was to be paid in cash, and for the balance notes were given payable monthly thereafter, and all of the notes were paid in full before the transaction in question here took place.

On May 4th, 1906, the bankrupt company desiring to purchase what is called a "fourth deck" for the machine named sent the following telegram to the representative of intervener:

"Please wire lowest cash payment, best rate of interest on deferred payments, longest time in which to pay for fourth deck for press. How soon could be shipped?"

To which the following reply was received on the same day:

"Cash payment one thousand, balance two years, payable quarterly, interest five per cent., ship eight weeks."

On May 8th the bankrupt company sent the following telegram:

"Ship soon as possible fourth deck for our press according to original agreement, forty-five hundred dollars delivered, and put on press, one thousand cash, balance two years, payable quarterly, interest five per cent. * * * "

On the same day, May 8th, the bankrupt company sent the representative of intervener the following letter:

"Confirming telegram this date as follows: 'Ship soon as possible fourth deck for our press according to original agreement, forty-five hundred dollars delivered, and put on press, one thousand cash, balance two years, payable quarterly, interest five per cent. * * *' It is our understanding that upon the erection of the fourth deck on press we will be due you $1,000.00 cash, and the balance, $3,500.00, in quarterly notes, bearing five per cent., notes to be secured in accordance with original agreement, your company retaining title to fourth deck until notes are paid. We hope to be in a position to purchase another press in the near future, as our business gives good promise for the future, and I want you to be in a position to quote very lowest price on same."

This letter was signed by the manager of the News Company.

On the same day, May 8th, the intervener through its president and general manager wrote the following letter to the bankrupt company:

"We have your telegram asking us to ship as soon as possible fourth deck for your press, according to the original agreement and as per our telegram to you of May 4th, 1906. This will have our immediate attention, and we will rush the work all we can consistent with good workmanship. We expect it will take just about eight weeks to get it ready for shipment. * * * "

After some correspondence with reference to the shipment of the deck and putting same up, on July 28th, the bankrupt company through its general manager wrote to the Goss Company, stating that the fourth deck had been put on to their satisfaction, and explaining why check for the $1,000 and notes were not sent on the day the letter was written, it being Saturday and inconvenient. On Monday thereafter the following letter was written by the general manager of the bankrupt company to the Goss Printing Press Company:

"I hand you herewith New York Exchange for $1,000.00, being cash payment for extra deck which you have just added to our printing press. I also inclose you herewith the following notes in settlement of our account, in accordance with contract, namely, $4,500.00, the terms as follows: $1,000.00 cash, the balance in quarterly installments covering a period of two years. notes to draw 5% interest per annum. * * * Please acknowledge receipt of this cash payment, and of the notes, etc., and oblige."

Then follows a memorandum of the several notes, the amount, and when due.

A petition in involuntary bankruptcy was filed against the News Publishing Company on the 31st day of January, 1907, and, on the 18th day of February thereafter, it was adjudged an involuntary bankrupt. On the 23d day of February, 1907, the Goss Printing Press Company filed its intervention in the bankruptcy court, setting up that by the terms of the contract between it and the News Publishing Company the title to the fourth deck had been reserved by it, and asking to have the same turned over to it. Answer was filed by the trustee denying that there was a conditional sale, and an intervention and answer was filed in the same connection by the Maddox-Rucker Banking

Company, trustee under a mortgage or deed of trust executed by the News Company on February 1, 1905, to secure the payment of a certain issue of bonds for $25,000, of which $17,200 had been sold. The issue raised on this intervention of the Goss Printing Press Company was referred to the referee, and he has made his report finding against the intervener. To this report exceptions have been filed, which raise several questions of interest.

The statute of this state on the subject of conditional sales as embodied in section 2776 of the Code of Georgia of 1895 is as follows:

"Whenever personal property is sold and delivered with the condition affixed to the sale, that the title thereto is to remain in the vendor of such personal property until the purchase price thereof shall have been paid, every such conditional sale, in order for the reservation of title to be valid as against third parties, shall be evidenced in writing, and not otherwise. And the written contract of every such conditional sale shall be executed and attested in the same manner as mortgages on personal property; as between the parties themselves, the contract as made by them shall be valid and may be enforced whether evidenced in writing or not."

The next section (2777) is as follows:

"Conditional bills of sale must be recorded within thirty days from their date, and in other respects shall be governed by the laws relating to registration of mortgages."

The meaning of section 2776 as applicable to the facts in this case as construed by the Supreme Court of the state is this: (1) Where there is a mere oral reservation of title and no writing whatever on the subject, the title will be so fixed in the vendee that the rights of third parties obtaining judgments or liens antedating the sale may be enforced against the vendor's claim of title. (2) Where the contract reserving title in the vendor is in writing, although not properly executed and recorded as required by the statute, the reservation is good as between the parties, and as to general creditors, and also as to creditors with liens antedating the conditional sale; and is only subject to such liens as are obtained, or debts arising from credit given in good faith by reason of the property being in the possession of the vendee with apparent ownership and without any notice of title elsewhere.

The first question in this case is, was there a good reservation of title as between the Goss Printing Press Company and the Atlanta News Publishing Company? I think it must be held that there was, eliminating for the moment the question of whether previously existing liens on the property of the Atlanta News Publishing Company attached to this fourth deck, and as to the rights of subsequent creditors, and looking at the matter solely as to the rights of the two parties to the contract. The telegram of May 8th sent by the representative of the News Company directed that the fourth deck should be sent "according to the original agreement," and on the same day a letter sent by the representative of the News Company shows what is meant by the original agreement, as the letter states "your company retaining title to the fourth deck until the notes are paid"; and, in the letter written the same day (May 8th) by the president of the Goss Printing Press Company, it is shown that he understood the contract as did the

representative of the News Company, for he uses the language "according to the original agreement." It seems to me that, if there had been no claims of third parties whatever, there could be no doubt as to the right of the Goss Company to have retaken the fourth deck on default in payment on the part of the News Company, under this clear reservation of title. What resistance could the News Company have made, being in default, when a demand for the return of the fourth deck was made, in view of the language of their letter, "your company retaining title to the fourth deck until the notes are paid"? In my opinion, none whatever. So that I think it may be assumed as between the parties this was a conditional sale in conformity with the statute of Georgia on this subject.

While the matter is presented somewhat informally by the report of the referee and the condition of the pleadings now before the court, it appears that the serious objection to the return of this property to the Goss Printing Press Company was on the part of the trustee for the bondholders under a mortgage or trust deed in existence at the time of the transaction with reference to the fourth deck. This mortgage covered all the property of the Atlanta News Publishing Company, and if this had been an unconditional sale of the fourth deck, undoubtedly its lien would have attached, subject to the question as to whether it became such an integral part of the press as that it could not be taken from it without injury to the machine, which will be alluded to hereafter. So that the important question is whether the Goss Company can take back this fourth deck, claiming title under its contract with the News Company as against the lien of this mortgage.

In Conder v. Holleman & Ballard, 71 Ga. 93, in the opinion by Judge Blanford, after discussing the last section referred to with reference to registration of conditional sales, the opinion proceeds as follows:

"But the object of the registration of mortgages is to give notice to all persons having dealings with the mortgagor of the existence of the mortgage; and in this case it appears that the dealings had between the plaintiff in execution and the defendant had taken place long before the sale of the property levied on, and which was sold by the claimant to the defendant in execution, and the judgment in said case had been obtained long before said conditional sale. Then whether said conditional sale had been duly recorded or not, it would not in any manner affect the plaintiff, whose judgment had been obtained before the sale, and as to him it made no difference whether the sale was recorded or not. A judgment creditor of a mortgagor whose judgment was obtained before the making of a mortgage, would not be affected by the record of such mortgage in any way. So this judgment creditor is in nowise affected by the nonrecord of this conditional sale; no right has accrued to him between the making of the conditional sale and the record of the same; he is not hurt by its nonrecord; and as to him it is the same as if the sale had been duly recorded. The title to this property was in the claimant, he having reserved the same until it was paid for by the defendant in execution, and he did not lose the same nor render it liable or subject to the judgment and execution of plaintiff by reason of not having his conditional sale recorded within thirty days. The lien of this judgment never attached to the property levied on."

In Mann v. Thompson, 86 Ga. 347, 12 S. E. 746, in the opinion also by Judge Blanford, he distinguishes the case then before the court from the case of Conder v. Holleman & Ballard, supra, because in the

instant case there was only a parol reservation of title, and in the preceding case the contract was in writing, and holding that an antecedent judgment against the purchaser would attach notwithstanding the parol reservation of title, Judge Blanford says in the opinion:

"Had this contract between Thompson and Webb been reduced to writing, then the present case would run all fours with the case cited in 71 Ga., supra."

In Cottrell v. Merchants' & Mechanics' Bank, 89 Ga. 508, 15 S. E. 944, this is said in the opinion by Chief Justice Simmons, on page 515 of 89 Ga., on page 946 of 15 S. E.:

"It may be said that the object of record is to notify subsequent purchasers or creditors of the prior claim, and thus save them from being misled by the appearance of ownership resulting from possession; that the plaintiffs, by failing to record, put it in the power of the party in possession to effect a fraud, and therefore they ought to bear the loss."

The same rule is laid down in Rhode Island Locomotive Works v. Empire Lumber Co., 91 Ga. 639, 17 S. E. 1012.

The only doubt I have had about the correctness of what has been said above, and the application of the authorities cited, arises from the language of the Chief Justice in the case of Merchants' Bank v. Cottrell & Sons, 96 Ga. 168, 23 S. E. 127. Some expressions in that opinion look as though the court intended to hold that a contract of conditional sale should be attested to make it good even against antecedent liens such as that contesting the rights of the seller here. The matter turns upon the sense in which the expression "third persons" is used in the opinion; and in order to reconcile that decision with the other decisions of the Supreme Court of the state it seems to me it would be necessary to consider the expression "third persons" as applying to those who obtained liens or became creditors upon the faith of the apparent ownership of the property in the buyer. There is, however, this language in the opinion:

"The main object of the statute was to prevent frauds and perjury which, in the absence of such a law, might be practiced by debtors and others in collusion with them to defeat creditors seeking to subject to their claims property apparently belonging to the debtor." Citing Rhode Island Locomotive Works v. Empire Lumber Co., supra.

It may be further observed that the case of Bank v. Cottrell, supra, was before the Supreme Court in 89 Ga. 508, 15 S E. 944, and from the report of the case there it appears that the printing press in question had been delivered to the Enquirer-Sun Company and placed in its office before the mortgage to the bank was given; so that the opinions in both cases dealt with that state of facts.

The whole trend of the decisions of the Supreme Court of the state is that where there has been a bona fide reservation of title by the seller of personal property, and the same reduced to writing, that such reservation is good between the parties, and as against all others who have not obtained rights or sustained loss on the faith of the apparent ownership of the property in the buyer. This view of the statute and of the effect of the decisions of the Supreme Court of the state is consistent with the view taken by this court, and by the Circuit Court of Appeals for this circuit in the case of Trust Co. v. Railway Co., 48 Fed. 868, 1 C. C. A. 133. In that case it was held in substance that the lien of a

mortgage or trust deed securing bonds did not attach to rolling stock sold the Marietta & North Georgia Railroad, as against the rights of the intervener Groome who had made a conditional sale of the same, reserving title in himself. It is also in line with the decisions of the Supreme Court of the United States construing similar statutes, in the cases of Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339, Meyer v. Car Co., 102 U. S. 1, 26 L. Ed. 59, and in the very recent case of York Manufacturing Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782. In the last-mentioned case it is said in the opinion that:

"There was no clause in the mortgage covering after-acquired property, and in any event the mortgage would not cover property so acquired, the title to which, as in this case, was reserved to the vendor."

I have given all the cases cited by counsel, and all I could find on this subject, a very careful examination, and the result of it is that I must hold, so far as this question is concerned, that the right of the Goss Printing Press Company to recover the fourth deck must be sustained.

There are two questions which remain unsettled, and it is impossible to settle them from the report of the referee or any evidence before the court: First, whether this fourth deck became an integral part of the entire press in such a way that it could not be separated without injuring the whole. So far as I can gather from the facts shown by the referee's report on this subject (in which are clearly typographical errors), there would not seem to be great difficulty about doing this. Unless this fourth deck could be removed after having been placed on the press without injury to the remainder of the press —that is, unless it was such a separate and distinct part of it that it could be taken off and leave the other part intact—it would seem to have become so much a part of the machine as that the lien of the mortgage would attach to it. And if this should be resolved in favor of the Goss Company, and it should be finally held that that company had a right to take back the fourth deck, it could only do so, in my judgment, after paying such proportion of the liens referred to by the referee in his report, as accrued against all the property of the News Company after the fourth deck became a part of the plant of the News Company, and before the bankruptcy. So far as I can see these liens consist of some laborers' liens and some taxes. Whether other liens arose and were paid I am not informed; but it is clear that the liens for taxes and the laborers' liens would attach to all the plant, and that under the most favorable view of the statute for the Goss Company, and considering also the fact that the liens were paid off out of the proceeds of the property generally, there would be no reason why there should not be deducted from the amount arising from the sale of the fourth deck, or standing in lieu of it, as I understand the agreement, the proportion which the amount realized from the fourth deck bears to the amount realized from the entire plant of the News Company.

It is suggested that these liens which attached to this fourth deck have been paid off. This would make no difference, as I understand the rule. A court of bankruptcy in a case like this would recharge,

and fix liens where they properly belong. These liens undoubtedly attached to the fourth deck even as against the Goss Company and its rights, and the fact that they were paid for the time being out of other funds should not prevent this fund from contributing its pro rata to their payment.

The matter is returned to the referee to give it final direction in accordance with the views herein expressed.